**FIRST CHARTER FINANCIAL CORP.,**
**Plaintiff-Appellee-Cross-Appellant,**

v.

**UNITED STATES of America,**
**Defendant-Appellant-Cross-Appellee.**

Nos. 80–5262, 80–5288.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Oct. 7, 1981.

Decided Feb. 26, 1982.

As Amended April 20, 1982.

Rehearing and Rehearing En Banc
Denied May 5, 1982.

David E. Carmack, Washington, D.C., argued, for United States; Johnathan S. Cohen, John F. Murray, Michael L. Paup, Richard D. Buik, Washington, D.C., on brief.

Robert J. Wynne, Hill, Wynne, Troop & Meisinger, Los Angeles, Cal., for First Charter Financial Corp.

Before SNEED, KENNEDY and SKOPIL, Circuit Judges.

SKOPIL, Circuit Judge:

## FACTS

American Savings & Loan ("American"), a subsidiary of First Charter Financial Corporation, is a domestic building and loan association as defined in I.R.C. § 7701(a)(19). American reported its taxable income on the cash receipts method of accounting and its bad debt deduction under the reserve method. American loaned money secured, either directly or indirectly, by interests in real property. The direct security was a promissory note secured by a first lien deed of trust with a power of sale. Under the indirect financing method American bought the property and sold an option to a purchaser. In addition to charges for purchase and development of the property, American charged the purchaser "option fees" equivalent to the interest American would have charged on a comparable loan.

When borrowers defaulted on loans, American generally foreclosed. American acquired clear title to option property when an optionee defaulted. American's acquisition and disposition of the properties it acquired is governed by I.R.C. § 595. During the 1971 tax year American sold a number of section 595 properties.

American's 1971 tax return was due March 15, 1972. It received an extension to September 15, 1972. It mailed its return to the IRS on September 8, 1972, which received it on September 11. American treated the proceeds from the sale of security properties as a nontaxable credit to its bad debt reserve. American treated proceeds from the sale of option properties as taxable gain.

On September 5, 1975 American timely filed a refund claim. It asserted that the gain realized from the sale of option properties had been erroneously reported as taxable gain. On September 11, 1975 American executed an agreement with the IRS granting the IRS an extension to March 31, 1976 in which to assess a tax deficiency. This was later extended to September 30, 1976. Both extensions were conditioned on the first extension having been executed before the statute of limitations expired. On September 2, 1976 the IRS mailed a deficiency assessment to American. American paid under protest and filed another refund claim, alleging that this deficiency assessment was barred by the statute of limitations. The IRS denied American's claims, and American sued.

## PROCEEDINGS BELOW

The district court held that the deficiency assessment was not barred by the statute of

limitations. Yet it held that American was not required to recognize any of the gain it realized from the sale of section 595 properties as taxable income. The court also held that American's post-foreclosure disposition expenses were not deductible business expenses.

The government appeals the district court's holding that American was not required to recognize delinquent interest which it recovered from sale of section 595 properties. American cross-appeals, arguing that the deficiency assessment is barred by the statute of limitations and that its post-foreclosure disposition expenses are deductible. We affirm in part, reverse in part, and remand.

## ISSUES

1. Was the 1971 deficiency assessment barred by the statute of limitations?

2. Were American's costs of selling section 595 properties deductible business expenses?

3. Was American required to recognize as ordinary income the accrued interest it recovered from sale of section 595 properties?

## DISCUSSION

### I. *Standard of Review*

■ The questions presented are legal. This court's review is *de novo.* This court generally defers to decisions of the Tax Court, and will not disagree with that court unless an unmistakable question of law so mandates. *Merlino v. Commissioner,* 660 F.2d 415, 416 (9th Cir. 1981); *Cruttenden v. Commissioner,* 644 F.2d 1368, 1374 (9th Cir. 1981). Uniformity among the circuits is especially important in tax cases to ensure equal and certain administration of the tax system. We would therefore hesitate to reject the view of another circuit. *See Gulf Inland Corp. v. United States,* 570 F.2d 1277, 1278 (5th Cir. 1978); *North American Life & Casualty Co. v. Commissioner,* 533

F.2d 1046, 1051 (8th Cir. 1976); *Federal Life Insurance Co. v. United States,* 527 F.2d 1096, 1098–99 (7th Cir. 1975).

### II. *Statute of Limitations*

The Commissioner is required to assess any tax "within three years after the return was filed". I.R.C. § 6501(a). The parties agree that the deficiency assessment was timely if the statute of limitations had not expired when they executed the first extension agreement on September 11, 1975. American contends the statute started running when it mailed its return on September 8, 1972, and expired September 8, 1975. The IRS contends the statute began to run when it received American's return on September 11, 1972, making the deficiency assessment timely.

Before 1966 a return was "filed" and the limitations period started running on receipt by the IRS. *E.g., Phinney v. Bank of the Southwest National Ass'n., Houston,* 335 F.2d 266, 268 (5th Cir. 1964). In 1966 Congress amended I.R.C. § 7502(a) to apply to tax returns. As amended, the statute provides:

> (1) Date of delivery.—If any return ... or other document required to be filed ... within a prescribed period or on or before a prescribed date under authority of any provision of the internal revenue laws is, after such period or such date, delivered by United States mail to the ... office with which such return ... or other document is required to be filed ... the date of the United States postmark stamped on the cover in which such return ... or other document ... is mailed shall be deemed the date of delivery....

> (2) Mailing requirements.—This subsection shall apply only if—

>> (A) the postmark date falls within the prescribed period on or before the prescribed date—

>>> (i) for the filing (including any extension granted for such filing) of

the return ... or other document ....

The IRS contends that section 7502 does not apply to this case, and that even if section 7502 does apply, the 1971 deficiency assessment was timely.

■ Treas. Reg. § 301.7502–1 interprets section 7502. Interpretive regulations merit less deference than legislative regulations implementing a specific grant of authority to define a statutory term or prescribe a method of executing a statutory provision. *United States v. Vogel Fertilizer Co.*, ── U.S. ──, ──, 102 S.Ct. 821, 827, 70 L.Ed.2d 792 (1982); *Rowan Cos. v. United States*, 452 U.S. 247, 252, 101 S.Ct. 2288, 2292, 68 L.Ed.2d 814, 821 (1981). Interpretive regulations should be followed "if found to implement the congressional mandate in some reasonable manner." *United States v. Vogel Fertilizer Co., supra; Rowan Cos. v. United States, supra.*

Regulation provides, in pertinent part:

(c) Mailing requirements. (1) Section 7502 is not applicable unless the document is mailed in accordance with the following requirements:

(i) The document must be contained in an envelope ... properly addressed to the ... office with which the document is required to be filed.

\* \* \* \* \* \*

(iii)(a) If the postmark on the envelope or wrapper is made by the United States Post Office, such postmark must bear a date on or before the last date, or the last day of the period prescribed for filing the document.

\* \* \* \* \* \*

(3) As used in this section, the term "the last date, or the last day of the period, prescribed for filing the document" includes any extension of time granted for such filing....

(d) Delivery....

(2) Section 7502 is applicable only when the document is delivered after the last date, or the last day of the period, prescribed for filing the document....

The regulation was issued before section 7502 was amended to include tax returns as well as other documents. American does not contend that the regulation does not also apply to tax returns. It has remained in effect since section 7502 was amended.

■ Section 7502 only applies where a document is delivered to the IRS after the last date prescribed for filing. American contends that it met this requirement. The original due date for its return was March 15, 1972. It mailed its return after that date, though before the extended deadline. American points out that section 7502(a)(2) specifically refers to extensions of time in stating the period within which a return must be mailed but that the delivery requirement of section 7502(a)(1) does not refer to extensions. American argues that whether the return had been received after the due date should be computed without reference to any extensions of time.

We reject this argument for the same reason that the Tax Court rejected it in *Pace Oil Co. v. Commissioner*, 73 T.C. 249 (1979). Section 7502(a) intended to make the date of mailing the date of delivery only where a document would otherwise be considered untimely filed. Section 7502(a)(1) "is sufficiently broad to include a period or date for filing prescribed by the Commissioner under authority of section 6081." *Pace Oil Co., supra*, 73 T.C. at 253–54. *Accord, Carnahan v. United States*, 81–2 U.S.T.C. ¶ 13,435 at 18,984–85, 532 F.Supp. 603, at 605 (S.D.Ind.1981).

■ Because American's return was received within the time prescribed, section 7502(a) does not apply. The return was filed when received on September 11, 1972. The 1971 deficiency assessment was therefore timely. Because we conclude that section 7502(a) does not apply in this situation, we need not address the conclusion in *Hotel Equities Corp. v. Commissioner*, 546 F.2d

725 (7th Cir. 1976), that section 7502(a) deems a timely mailed but untimely received document filed for all purposes when mailed.

### III. *Post-Foreclosure Disposition Expenses.*

▆▆▆ American contends that the costs of selling property on which it has foreclosed should be deductible as ordinary and necessary business expenses under I.R.C. § 162(a). We disagree.

This court has previously concluded that post-foreclosure disposition expenses must be taken into account through adjustments to the taxpayer's bad debt reserve. *Allstate Savings & Loan Ass'n. v. Commissioner*, 68 T.C. 310 (1977), *aff'd*, 600 F.2d 760 (9th Cir. 1979), *cert. denied*, 445 U.S. 962, 100 S.Ct. 1649, 64 L.Ed.2d 237 (1980). We are bound by this precedent. *Ellis v. Carter*, 291 F.2d 270, 273 n.3 (9th Cir. 1961). We also agree with its conclusion that "the expenses of selling the foreclosed property are inherently capital in nature." 68 T.C. at 320. Post-foreclosure disposition expenses are added to the taxpayer's basis in the property. As the IRS concedes, until the taxpayer's full basis is recovered, including post-foreclosure disposition expenses, no amount can be attributed to receipt of accrued but unpaid interest. Receipt of amounts representing a recovery of capital must be taken into account as a charge or credit to the bad debt reserve. I.R.C. § 595(b); Treas. Reg. § 1.595–1(e)(6).

### IV. *Recovery of Accrued But Unpaid Interest.*

A savings and loan does not recognize gain or loss at the time of foreclosure. I.R.C. § 595(a). The statute telescopes the foreclosure, purchase, and resale of property into a single transaction for tax purposes. *Allstate Savings & Loan Ass'n, supra*, 68 T.C. at 317. The statute also provides:

> Any amount realized by [a savings and loan association] with respect to [foreclosure] property shall be treated for purposes of this chapter as a payment on account of such indebtedness, and any

loss with respect thereto shall be treated as a bad debt to which the provisions of section 166 (relating to allowance of a deduction for bad debt) apply.

I.R.C. § 595(b).

The relevant regulation provides, in pertinent part:

> An amount realized with respect to acquired property means an amount representing a recovery of capital, such as proceeds from the sale or other disposition of the property, payments on the original indebtedness made by or on behalf of the debtor (including amounts received under an insurance contract with the Federal Housing Administration or a guaranty by the Veterans' Administration), and collections on a deficiency judgment obtained against the debtor (other than amounts treated as interest under applicable local law).

Treas. Reg. § 1.595–1(e)(6).

The IRS argues that recovery of accrued but unpaid interest is not "an amount representing a recovery of capital". It is therefore not credited to the bad debt reserve, but reported as ordinary income under I.R.C. § 61(a)(4). Rev. Rul. 75–251, 1975–1 C.B. 175. American contends that no part of the proceeds from the foreclosure sale can be, either as a matter of fact or a matter of law, a recovery of interest. It argues that the government has stipulated that those proceeds are not interest payments. It also argues that all such proceeds are recoveries of capital under the Treasury Regulation.

### A. The Parties' Stipulation

▆▆▆ The parties stipulated: "American has never received any payment on account of all or any portion of the Delinquent Interest due on any Defaulted Real Property Loan from the borrower or any other person whomsoever." The district court adopted this stipulation in its findings of fact.

The stipulation that American has not received any "payment on account" of interest is not a concession that American has recovered no interest. It sufficiently dif-

ferentiates between amounts which represent a recovery of the principal-type characteristics of the loan, and those which do not relate to principal. Recoveries of the former are handled through adjustments to the bad debt reserve. Recovery of accrued but unpaid interest is not a recovery based upon the principal of the loan. Accordingly, it is not treated as a credit to the bad debt reserve. It held only that all proceeds from sale of section 595 properties constitute recoveries of capital credited to the taxpayer's bad debt reserve. The district court did not hold that the IRS conceded that American had recovered no interest.

While American may not have received any "payment on account" of accrued but unpaid interest, it may nonetheless have recovered such interest through a post-foreclosure sale, if it sold security or option property for more than the principal amount due on the loan plus disposition expenses. This more limited interpretation of the stipulation is consistent with two other stipulations. They provide, as to option properties, that if a savings and loan is required to recognize interest income on the disposition of real property, particular sums will constitute interest income to American. This also indicates that no one believed the stipulation resolved the interest income question.

B. The Treasury Regulation

As noted above, the statute provides that "[a]ny amount realized . . . with respect to [foreclosure] property" shall be handled through adjustments to the bad debt reserve. I.R.C. § 595(b). The regulation interprets this as amounts "representing a recovery of capital". Treas. Reg. § 1.595–1(e)(6).

 The regulation is an interpretive regulation interpreting the phrase "any amount realized". Although the regulation was promulgated pursuant to the grant of authority in I.R.C. § 595(d), the grant of authority is a general one. It does not authorize the Commissioner to define a statutory term or prescribe a method of executing a statutory provision. *See United States v. Vogel Fertilizer Co., supra,* —— U.S. at ——, 102 S.Ct. at 827; *Rowan Cos. v. United States, supra,* —— U.S. at ——, 101 S.Ct. at 2292, 68 L.Ed.2d at 821. Deference is particularly appropriate to this interpretive regulation, since Congress used such general language as to render an interpretive regulation appropriate. *See United States v. Vogel Fertilizer Co., supra; National Muffler Dealers Ass'n v. United States,* 440 U.S. 472, 476, 99 S.Ct. 1304, 1306, 59 L.Ed.2d 519 (1979). The phrase "any amount *realized*" is not self-defining. It must be interpreted in light of its origin and purpose. *See United States v. Correll,* 389 U.S. 299, 304 & n.16, 88 S.Ct. 445, 448, 19 L.Ed.2d 537 (1967). We review the regulation to determine whether it is a reasonable interpretation of the statute's plain language, its origin, and its purpose. *United States v. Vogel Fertilizer Co., supra; National Muffler Dealers Ass'n v. United States, supra,* 440 U.S. at 477, 99 S.Ct. at 1307. A Treasury regulation "is not invalid simply because the statutory language will support a contrary interpretation." *United States v. Vogel Fertilizer Co., supra.* The regulation only need implement the congressional mandate in some reasonable manner. *United States v. Vogel Fertilizer Co., supra* (quoting *United States v. Correll, supra,* 389 U.S. at 307, 88 S.Ct. at 449).

 Congress authorized the Commissioner to "prescribe such regulations as he may deem necessary to carry out the purposes of this section." I.R.C. § 595(d). The purpose of the section was to telescope foreclosure, purchase, and resale into one taxable event, treat post-foreclosure receipts as payments on the indebtedness, and treat the foreclosed property as having the same characteristics as the debt for which it was security. S.Rep.No. 1881, 87th Cong., 2d Sess. 47 (1962), *reprinted in* 2 Legislative History of the Revenue Act of 1962, at 2,405 (1967). There is nothing in the legislative history indicating that Congress specifically intended that recovery of accrued but unpaid interest should be treated as a credit to the bad debt reserve.

 At least to the extent that it provides that receipt of accrued but unpaid interest is not credited to the bad debt

reserve, the regulation harmonizes with the statute's plain language, origin, and purpose. The regulation carries out Congress' purpose of adjusting the bad debt reserve to reflect the lender's ability to recover its basis. It preserves the distinction in prior law that receipt of interest is income and not a recovery of principal or a capital asset. *See Maass v. Higgins*, 312 U.S. 443, 447, 61 S.Ct. 631, 633, 85 L.Ed. 940 (1941); *Commissioner v. Morgan*, 272 F.2d 936, 939 (9th Cir. 1959); *United States v. Snow*, 223 F.2d 103, 109 n.3 (9th Cir.), *cert. denied*, 350 U.S. 831, 76 S.Ct. 64, 100 L.Ed. 741 (1955).

Our decision is not inconsistent with *First Federal Savings & Loan Ass'n v. United States*, 660 F.2d 767 (Ct.Cl.1981). In that case the Court of Claims held that rents received by a savings and loan association during the period between foreclosure and sale are not ordinary income, but are credits to the bad debt reserve. The Court of Claims struck down the Commissioner's interpretation, expressed in Treas. Reg. § 1.595–1(e)(6), that only amounts representing a recovery of capital are treated as credits to the bad debt reserve. The court found this interpretation inconsistent with section 595 to the extent that it prevented treating receipt of rents as a credit to the bad debt reserve. 660 F.2d at 770. The court felt that this result was required in that case because Congress explicitly forbade savings and loan associations to take a depreciation deduction. *Id.* at 769. Ordinarily, where rental income is treated as ordinary income, a depreciation deduction is permitted. The court concluded that Congress did not intend to alter this general rule and therefore would not require a taxpayer to take the rents into account as

ordinary income if no depreciation deduction were permitted.

In our case, as noted above, the general rule is that interest is ordinary income. There is no indication from Congress that it intended to alter this rule. No principles of taxation or fairness require that recovery of accrued but unpaid interest be treated as a credit to the bad debt reserve.[1]

Our result is also fully consistent with *Allstate Savings & Loan Ass'n v. Commissioner, supra*. Because "the expenses of selling the foreclosed property are inherently capital in nature", 68 T.C. at 320, recovery of those expenses is a recovery of capital. It is therefore credited to the bad debt reserve. Receipt of interest is not a recovery of capital. It is therefore fully consistent not to treat it as a credit to the bad debt reserve, but as ordinary income.

Permitting a taxpayer to recover interest without recognizing ordinary income would mean that taxpayers would be treated differently solely because of the accounting method they use. Of course courts "should be slow to attribute to Congress a purpose producing such unequal treatment among taxpayers, resting on no rational foundation." *United States v. Gilmore*, 372 U.S. 39, 48, 83 S.Ct. 623, 628, 9 L.Ed.2d 570 (1963).

An accrual method taxpayer recognizes interest as it accrues. It will therefore take ordinary income at the time the payment is due. The amount previously reported as accrued interest is applied to the taxpayer's basis in the property. Consequently, all that it receives when it sells the foreclosure property is a recovery of capital. Treas. Reg. § 1.595–1(d). Any recovery of that

---

1. Moreover, in *First Federal*, after sale of the properties, the taxpayer suffered a loss of $206,000. The total net profits from rental of the properties by the taxpayer was $82,833. Hence, combining all proceeds, the taxpayer still suffered a loss on the debts and never recovered its basis.

 In our case, the Commissioner is seeking to treat as ordinary income payments attributable to interest only after the original principal and

basis have been recovered. The Commissioner concedes that no proceeds may be attributed to interest, and hence treated as ordinary income, until the original basis is recovered. Applying this rule in *First Federal* would lead to the result the Court of Claims actually reached. The taxpayer would not be required to recognize ordinary income because it had not recovered its basis.

interest from sale of the property cancels out this increase in basis, and no credit is assigned to the bad debt reserve.

■ If the recovery of accrued but unpaid interest by a cash method taxpayer is not treated as ordinary income, the cash method taxpayer will take a nontaxable credit to its bad debt reserve. This credit may or may not reduce the taxpayer's bad debt deduction in a later year.[2] The cash method taxpayer at least defers the gain. A mere difference in choice of accounting method should not have such significant consequences, absent some clear indication to the contrary. *See United States v. Snow, supra,* 223 F.2d at 109 n.3.

The regulation does not provide that all sales proceeds of section 595 property constitute a recovery of capital unless treated as interest under local law. The reference to applicable local law refers only to payments on a deficiency judgment. Treas. Reg. 1.595–1(e)(6). The reference to local law is contained within parentheses in a phrase separated by commas from two other distinct phrases. Another parenthetical in the regulation clearly refers only to the clause of which it is a part. In construing statutes, qualifying phrases are generally applied to the immediately preceding phrase and not to phrases more remote. *Azure v. Morton,* 514 F.2d 897, 900 (9th Cir. 1975).

The regulation also does not provide that the only amount not treated as a return of capital on sale of section 595 property is a collection on a deficiency judgment that is treated as interest under local law. Interpreting the regulation in that manner would render ineffective the limitation that only amounts representing a recovery of capital are credited to the bad debt reserve. The examples given in the regulation do not

override this general rule. Construction which gives effect to all of the words of a statute or regulation is preferred over an interpretation which renders some of the statute or regulation ineffective. *Hughes Air Corp. v. Public Utilities Comm'n,* 644 F.2d 1334, 1338 (9th Cir. 1981).

■ We conclude that the phrase "recovery of capital" is not ambiguous. It sufficiently states that amounts which do not represent a recovery of principal or basis, such as the amount attributable to accrued interest here, are not treated as a credit to the bad debt reserve.

### CONCLUSION

The district court correctly held that the 1971 deficiency assessment was not barred by the statute of limitations and that American's post-foreclosure disposition expenses are not deductible business expenses. The district court erred in holding that the proceeds from a post-foreclosure sale which constitute recovery of accrued but unpaid interest need not be recognized as ordinary income. The judgment appealed from is AFFIRMED in part, REVERSED in part, and REMANDED.

SNEED, Circuit Judge, specially concurring:

I concur in the court's opinion except part IV.B., and with respect to that part, I concur in the result.

Treas. Reg. § 1.595–1(e)(6) is less persuasive to me than it appears to be to my brothers. It can be read as the appellant insists. It nowhere suggests, other than in the parenthetical clause pertaining to "interest under applicable local law," that under certain circumstances a portion of the "amount realized" should be treated as tax-

---

**2.** There are constraints on the permissible additions to the reserve for losses on qualifying real property loans under I.R.C. § 593, so that it is possible that current additions to the bad debt reserve will not reduce the permissible tax deduction in later years if the reserve would have

exceeded these constraints anyway. *See First Federal Savings & Loan Ass'n v. United States, supra,* 660 F.2d at 768. *See generally* Clark, *The Federal Income Taxation of Financial Intermediaries,* 84 Yale L.J. 1603, 1633–35 (1975).

able gain. Any amount so treated does not represent "a recovery of capital." "A recovery of capital" is no different from "a return of capital" which normally is that portion of the amount realized that represents a return to the taxpayer of an amount equal to the adjusted basis of the property he exchanged. Interest income does not represent a return of the taxpayer's adjusted basis or net remaining investment in an obligation. The regulation, however, can be read to require that such income under the circumstances of this case be so treated.

I agree, however, that such a reading yields an improper result when measured against sound tax theory. Our task, as I see it, is to reach the proper result in an acceptable manner notwithstanding the obstacle this example of poor regulation writing by the Department of Treasury presents. The key, it seems to me, lies in the language of I.R.C. § 595(b) that requires that the property acquired on foreclosure "be considered as property having the same characteristics as the indebtedness for which such property was security." The "indebtedness" that the foreclosed property secured possessed the characteristic of yielding interest. To have the same characteristics as the "indebtedness" the foreclosed property must also have that ability. In this case that characteristic bore fruit. Approached this way it is possible to suggest that the Treasury Regulation upon which the taxpayer relies concerns itself only with those characteristics of the property that correspond to the characteristics of the *principal* (as opposed to its *interest bearing* characteristic) of the indebtedness. Any amount realized with respect to the acquired property's *principal* characteristics very properly may be treated as "a recovery of capital" within the structure Congress has devised for taxing building and loan associations. The regulation reads very nicely when so construed.

It is true that this construction blunts the force of the regulation's literal language; but it is better to do this than it is to distort the language and purpose of the statute which the regulation purports to interpret. Deference to an agency's interpretation of a governing statute does not include inflexible adherence to the literal language by which the interpretation is expressed.