SECURITY BANK S.S.B. & SUBSIDIARIES, F.K.A. SECURITY SAVINGS AND LOAN ASSOCIATION & SUBSIDIARIES, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 472–92, 15464–93.        Filed August 15, 1995.

*Robert A. Schnur* and *Sara Berman Jensen,* for petitioners.
*Mark D. Petersen,* for respondent.

## OPINION

NIMS, *Judge:* Respondent determined the following deficiencies in petitioners' Federal income tax:

| FYE | Deficiency |
|---|---|
| June 30, 1985 | $75,644 |
| June 30, 1986 | 112,277 |
| June 30, 1987 | 103,992 |
| June 30, 1988 | 121,356 |

Unless otherwise indicated, all section references are to sections of the Internal Revenue Code in effect for the years in issue. All Rule references are to the Tax Court Rules of Practice and Procedure.

After concessions, the sole issue remaining for decision is whether petitioner is required to report currently as ordinary income its realized gains from the sale of real property that it acquired through foreclosure or similar method, to the extent there existed unpaid interest on the loans secured by the property.

All of the facts have been stipulated and are found accordingly. The stipulations of fact and the attached exhibits are incorporated herein by this reference.

Petitioner Security Bank S.S.B. is the parent of an affiliated group within the meaning of section 1504. Petitioner is a corporation licensed under Wisconsin law to transact business as a savings and loan association. Petitioner's principal place of business was located in Milwaukee, Wisconsin, when it filed its petitions.

During the years at issue, petitioner received cash deposits from the public and made loans that were predominantly secured by interests in real property. These activities, among others, enabled petitioner to qualify as a "domestic building and loan association" within the meaning of section 7701(a)(19). Most of petitioner's loans were secured by way of first mortgages on residential real property.

Petitioner keeps its books and files for Federal income tax returns on the basis of a fiscal year ended June 30. During its fiscal years ended June 30, 1985, June 30, 1986, and June 30, 1987, petitioner reported its taxable income on the cash receipts and disbursements method of accounting. For its fiscal year ending June 30, 1988, petitioner, in compliance with the requisite Internal Revenue Code provisions, changed to the accrual method of accounting. For all years before the Court, petitioner computed its deduction for bad debts by using the reserve method of accounting for bad debts, as authorized by section 593(b). Petitioner used the percentage of taxable income method permitted by section 593(b)(2) to determine reasonable additions to its bad debts reserve.

Most of the properties that secured the loans made by petitioner were located in Wisconsin. Under Wisconsin law, when a borrower defaults on a mortgage note and fails to cure such default, the lender's primary remedies are either: (1) To institute a court foreclosure action; or (2) to accept a deed from the borrower in lieu of foreclosure. Most of the properties involved in this case were acquired by petitioner by way of foreclosure, while the remaining ones were acquired by accepting a deed in lieu of foreclosure. Ordinarily, petitioner waived its right under Wisconsin law to seek a deficiency judgment against the defaulting debtor.

At the time petitioner acquired each of the aforementioned properties, either by way of foreclosure or by acceptance of a deed in lieu of foreclosure, there existed an amount of unpaid interest on the underlying defaulted debt. In most cases when petitioner foreclosed, it would typically bid, at a sheriff's sale, an amount equal to the sum of the outstanding principal and interest on the underlying loan, plus interest on that total amount, plus advances and costs. If petitioner's bid was the highest or only bid and it was confirmed by the court, then petitioner would acquire title to the property by way of a sheriff's deed. Receipt of such a deed would extinguish any interest of the mortgagor in the underlying property or the proceeds received from its sale.

Petitioner generally attempted to dispose of the acquired properties as soon as practicable, and eventually sold them to unrelated third parties. In some instances, petitioner realized a gain from the resale of a property because the proceeds received exceeded petitioner's adjusted basis in the

property. At other times, petitioner realized a loss because the proceeds received were less than adjusted basis. Petitioner accounted for its gains by crediting the amount of each gain to a bad debt reserve, and accounted for its losses by charging the amount of a loss to the bad debt reserve. Only the properties on which petitioner realized gains (hereinafter called the foreclosure properties) are the subject of this case.

For its fiscal year ended June 30, 1988, petitioner's practice was to accrue and report the unpaid interest on a loan only for a period ending 90 days after the borrower defaulted on the loan.

The unpaid interest that is the subject of the dispute in this case is the mortgage interest that remained unpaid at the time the properties were acquired by petitioner in foreclosure actions or by deeds in lieu of foreclosure. No further interest, as such, was "earned" on the mortgages between the time petitioner obtained the foreclosure properties and the time petitioner sold them.

The following table reflects by year and category the gain realized by petitioner on the sale of the foreclosure properties:

| Year | Gain | Interest to date of foreclosure | Excess of gain over interest to foreclosure |
|------|------|--------------------------------|---------------------------------------------|
| 6/30/85 | $562,834.00 | $296,824.00 | $266,010.00 |
| 6/30/86 | 657,493.00 | 316,164.00 | 341,329.00 |
| 6/30/87 | 181,178.95 | 100,294.11 | 80,884.84 |
| 6/30/88 | 202,386.83 | 151,023.95 | 51,362.88 |
| Total | 1,603,892.78 | 864,306.06 | 739,586.72 |

Respondent's deficiency notice for petitioner's 1985 and 1986 fiscal years states that "you must include, in your gross income, gain from the sale of foreclosed property to the extent that it represents accrued but unpaid interest up to the date of judgment in foreclosure."

Respondent's deficiency notice for petitioner's 1987 and 1988 fiscal years states:

It has been determined that you received interest income of $115,393 and $162,318 for the respective years ended June 30, 1987 and June 30, 1988. These amounts, which were not reported in your returns, represent the gain from the sale of foreclosed properties to the extent of accrued but

unpaid interest on the original indebtedness of the mortgagors. Therefore your taxable incomes for the respective years ended June 30, 1987 and June 30, 1988 are increased by $115,393 and $162,318 respectively.

In connection with petitioner's change from the cash to the accrual method of accounting beginning with its June 30, 1988, fiscal year, petitioner filed a Form 3115 reflecting a net section 481(a) adjustment in the amount of $11,618,936 for such year. This section 481(a) adjustment did not include the unpaid and accrued interest that makes up respondent's interest income adjustment for petitioner's June 30, 1988, fiscal year.

The precise issue presented by this case has been considered previously by two appellate courts, and the result in each appellate court decision supports respondent's position here. These decisions are *Gibraltar Fin. Corp. of California v. United States,* 825 F.2d 1568 (Fed. Cir. 1987), revg. 10 Cl. Ct. 31 (1986); and *First Charter Fin. Corp. v. United States,* 669 F.2d 1342 (9th Cir. 1982), affg. in part, revg. in part, and remanding an unreported U.S. District Court case. The issue is one of first impression in the Tax Court.

A sale of property which had been acquired by foreclosure or deed in lieu of foreclosure is within the ambit of section 595, which provides:

SEC. 595. FORECLOSURE ON PROPERTY SECURING LOANS.

(a) NONRECOGNITION OF GAIN OR LOSS AS A RESULT OF FORECLOSURE.— In the case of a creditor which is an organization described in section 593(a), no gain or loss shall be recognized, and no debt shall be considered as becoming worthless or partially worthless, as the result of such organization having bid in at foreclosure, or having otherwise reduced to ownership or possession by agreement or process of law, any property which was security for the payment of any indebtedness.

(b) CHARACTER OF PROPERTY.—For purposes of sections 166 and 1221, any property acquired in a transaction with respect to which gain or loss to an organization was not recognized by reason of subsection (a) shall be considered as property having the same characteristics as the indebtedness for which such property was security. Any amount realized by such organization with respect to such property shall be treated for purposes of this chapter as a payment on account of such indebtedness, and any loss with respect thereto shall be treated as a bad debt to which the provisions of section 166 (relating to allowance of a deduction for bad debts) apply.

(c) BASIS.—The basis of any property to which subsection (a) applies shall be the basis of the indebtedness for which such property was secured (determined as of the date of the acquisition of such property), properly increased for costs of acquisition.

(d) REGULATORY AUTHORITY.—The Secretary shall prescribe such regulations as he may deem necessary to carry out the purposes of this section.

Thus, section 595(a) provides, in the case of a savings and loan association described in section 593(a) (which the parties agree includes petitioner), that no gain or loss is to be recognized, and no debt is to be considered as becoming worthless or partially worthless, as the result of the acquisition of property by mortgage foreclosure or other procedure having similar effect. Pursuant to section 595(b), any property so acquired is to be considered as having the same characteristics as the indebtedness for which the property was security. Section 595(b) also provides that any amount realized with respect to such property is to be treated as a payment on account of such indebtedness, and any loss with respect thereto is to be treated as a bad debt. Section 595(c) provides that the basis of any property so acquired is to be the basis of the indebtedness for which the property was security. Section 595(d) confers authority on the Secretary to "prescribe such regulations as he may deem necessary to carry out the purposes" of section 595.

Under section 1.595–1(e)(6), Income Tax Regs., "An amount realized with respect to acquired property means an amount representing a recovery of capital", such as proceeds from the sale or other disposition of property, payments on the original indebtedness by or on behalf of the debtor, and "collections on a deficiency judgment obtained against the debtor (other than amounts treated as interest under applicable local law)".

Section 1.595–1(e)(6)(i), Income Tax Regs., provides that

> Any amount realized shall be applied against and reduce the adjusted basis of the acquired property, and to the extent that such amount exceeds the adjusted basis, it shall, in the case of a creditor using the specific deduction method of accounting for bad debts, be included in gross income as ordinary income, or, in the case of a creditor using the reserve method of accounting for bad debts, be credited to the appropriate bad debt reserve * * *.

As previously noted, petitioner uses the reserve method of accounting for bad debts.

Under section 1.595–1(e)(6)(ii), Income Tax Regs., a loss is recognized if the amount realized on the sale or other dis-

position of the property is less than the adjusted basis of the property.

For completeness, we also quote section 593(c), since that section contains the authority for petitioner's treatment of its reserves for bad debts:

SEC. 593. RESERVES FOR LOSSES ON LOANS.

(c) TREATMENT OF RESERVES FOR BAD DEBTS.

(1) ESTABLISHMENT OF RESERVES. Each taxpayer described in subsection (a) which uses the reserve method of accounting for bad debts shall establish and maintain a reserve for losses on qualifying real property loans, a reserve for losses on nonqualifying loans, and a supplemental reserve for losses on loans. For purposes of this title, such reserves shall be treated as reserves for bad debts, but no deduction shall be allowed for any addition to the supplemental reserve for losses on loans.

When enacted in 1962, section 595 effected a major change in the law for transactions described in section 595(a) occurring after December 31, 1962, in fiscal years ending after such date. Revenue Act of 1962, Pub. L. 87–834, sec. 6, 76 Stat. 960, 982; S. Rept. 1881 (1962), 1962–3 C.B. 707, 753–754. Under prior law, the foreclosure event was considered a taxable event. Section 595 eliminates the mortgage foreclosure as a separate taxable event, and the recognition of gain or loss is postponed until sale or other disposition of the acquired property. In making this change, Congress viewed deferring recognition of gain or loss until disposition of the property secured by a mortgage as more in accord with the economic realities of a mortgage foreclosure by a mutual savings institution, because such proceeding was essentially an incidental step in the process of collecting on the loan. This step made no significant change in the lender's economic relationship to the property used to secure the loan. Also, by postponing recognition of gain or loss until the collection process actually yielded proceeds from the sale or other disposition of the property, Congress was able to eliminate the uneven results that existed under prior law. *Id.*

Prior to enactment of section 595, the foreclosure event was considered a taxable transaction in which a bad debt deduction would have arisen if the bid price was less than the amount outstanding on the loan. S. Rept. 1881, *supra,* 1962–3 C.B. at 753. If the property was bid in at the amount

of the loan, no bad debt deduction was allowed. A gain or loss would have occurred, however, if the fair market value of the property differed from the bid price. *Id.* If the property was successfully bid in by the lender, a gain or loss was usually also realized on the subsequent disposition of the property. *Id.* Prior to the enactment of section 595, a body of case law developed under which a cash method lender was deemed to have received accrued but unpaid interest upon the acquisition of property in a mortgage foreclosure. See *Gibraltar Fin. Corp. of California v. United States,* 825 F.2d at 1572. Under that case law, a lender using the cash method was required to recognize accrued but unpaid interest as taxable income where the mortgaged property was "bought in" at a mortgage foreclosure sale by applying the bid price not only to the amount of the debt but also to the amount of the unpaid interest. *Id.* at 1572–1573.

A cash method lender also was required to recognize the unpaid interest as taxable income where the mortgaged property was acquired in lieu of foreclosure and the fair market value of the property exceeded the basis of the debt (plus costs). See, e.g., *Helvering v. Missouri State Life Ins. Co.,* 78 F.2d 778 (8th Cir. 1934).

As the court in *Gibraltar* noted,

This body of case law did not apply to an accrual basis * * * [lender] who had already reported the interest as income prior to the foreclosure, which would generally be the case. If the interest income were not properly accruable (e.g., because collection was too uncertain) an accrual method lender would be on the same footing as a cash method lender. [*Gibraltar Fin. Corp. of California v. United States, supra* at 1572 n.2; citation omitted.]

Although petitioner changed to the accrual method of accounting for the fiscal year ended June 30, 1988, under respondent's theory in this case unpaid delinquent interest should have been included in income to the extent of any gain on the properties which were disposed of in that fiscal year. Respondent agrees, however, that the unpaid delinquent interest for the fiscal year ended June 30, 1988, does not include the interest accrued by petitioner for the period ending 90 days from the date of default, since that portion had previously been included in taxable income. Under the

regulations, such portion would properly be added to basis. Sec. 1.595–1(d), Income Tax Regs.

Petitioner's 90-day accrual practice, begun when petitioner changed from the cash to the accrual method of accounting, is apparently in conformity with requirements of the regulations of the Federal Home Loan Bank Board. See 12 C.F.R. sec. 563c.11(b) (1986), Uncollectible Interest on Loans; see also, *Gibraltar Fin. Corp. of California v. United States,* 10 Cl. Ct. 31, 35 n.2 (1986), revd. 825 F.2d 1568 (Fed. Cir. 1987); Peat, Marwick, Mitchell & Co., 1 Taxation of Financial Institutions, sec. 17.06[2], 17–11 through 17–13 (1983).

Respondent argues that even though section 595 affected the pre-1963 case law insofar as that law relied upon foreclosure as a separate recognition event for tax purposes, it does not follow that the enactment of section 595 was intended to overrule the fundamental and well-settled tax principle that interest constitutes ordinary income under section 61(a)(4). Respondent points out that, as noted above, foreclosure was eliminated as a separate taxable event because Congress was of the view that, for mutual savings institutions, such a proceeding was essentially a step in the process of collecting on the loan. Congress accordingly postponed recognition until the collection process yielded actual proceeds, including previously unpaid interest, from the sale or other disposition of the acquired property.

According to respondent, when there is an actual recovery of unpaid interest during the collection process, there is no logical reason to permit a lender to escape recognition of the unpaid interest as taxable income in the year of its recovery. Respondent asserts that neither the language of the statute nor its legislative history suggests that Congress intended to overrule, for mutual savings associations, the fundamental tax principle that interest constitutes taxable income under the Internal Revenue Code.

Petitioner argues that the plain language of section 595 requires that all gains from the sale of properties acquired by foreclosure or a similar procedure are to be treated as credits to the seller's bad debt reserve, and that this result is supported by the regulations and the legislative history. Petitioner reads section 595(b) to mean that the entire amount of any gain or loss realized upon a sale is to be treat-

ed as a credit or charge to the selling institution's bad debt reserve.

Petitioner also argues that the definition of "amount realized" in the second sentence of section 1.595–1(e)(6), Income Tax Regs., limits this concept to a recovery of capital, and that a recovery of interest does not fall within the statutory rule as so narrowed. Furthermore, the regulations also provide that *any* amount realized in excess of adjusted basis, under an accounting for bad debts method such as petitioner's, is to be credited to a bad debt reserve, and this would include previously uncollected interest. Sec. 1.595–1(e)(6)(i), Income Tax Regs. In this connection we note that the only reference to interest in any part of the relevant section 595 regulations is to be found in a parenthetical clause relating solely to deficiency judgments against the debtor. Sec. 1.595–1(e)(6), Income Tax Regs; see *First Charter Fin. Corp. v. United States,* 669 F.2d at 1350.

It may be useful at this point to recapitulate some essential facts. During the 4 fiscal years at issue, petitioner realized a total gain in sales of the foreclosure properties of $1,603,892.78. This amount is made up of interest to the date of foreclosure of $864,306.06 and gain totaling $739,586.72 in excess of the latter amount. Thus, regardless of the outcome of this case, petitioner will have had the benefit of deferral of at least $739,586.72. Respondent does not seek to tax this amount currently.

Respondent's argument essentially tracks Rev. Rul. 75–251, 1975–1 C.B. 175.

Rev. Rul. 75–251 takes the position that:

(1) Section 1.595–1(e)(6)(i), Income Tax Regs., provides that any "amount realized", to the extent it exceeds basis, is credited to a bad debt reserve;

(2) section 1.595–1(e)(6), Income Tax Regs., limits the application of the foregoing by defining the amount realized as a recovery of capital;

(3) under pre-section 595 law, interest received in connection with a foreclosure proceeding is not a recovery of capital (citing *Helvering v. Midland Mut. Life Ins. Co.,* 300 U.S. 216 (1937));

(4) only that portion of the amount realized upon the disposition of foreclosure property "representing the capital characteristics" of the property is chargeable to a bad debt

reserve under section 595. The portion "representing the interest characteristic of the property" represents interest income to a cash method taxpayer in the year realized and is reportable as such. Rev. Rul. 75–251, 1975–1 C.B. 175.

It is true, as indicated by the revenue ruling, that the regulation defines the section 595(b) term "amount realized" as "an amount representing a *recovery of capital*". Sec. 1.595–1(e)(6), Income Tax Regs. (emphasis added). But the same regulation uses "amount realized" in a different way; i.e., to specify the treatment for tax purposes of an excess of sales proceeds over adjusted basis (without any reference to interest). Sec. 1.595–1(e)(6)(i), Income Tax Regs.

Although the regulation has been criticized as poorly drafted in that respect, we agree with respondent that the unrecovered interest is currently reportable. Section 595(b) begins by stating that foreclosure type property is to be considered as having the same characteristics as extinguished indebtedness. We construe this to mean as being like an interest-producing indebtedness. Section 595(b) then goes on to say that when the property is sold, any amount realized is to be treated as a payment on account of the indebtedness.

In *Gibraltar Fin. Corp. of California v. United States*, 825 F.2d at 1574, the taxpayer argued that the definition of "amount realized" contained in section 1001 ("the sum of any money received plus the fair market value of the property (other than money) received") should be applied in the context of section 595(b). Thus, the taxpayer argued, "amount realized" would include recovered interest, and since section 1.595–1(e)(6)(i), Income Tax Regs., expressly provides that "Any amount realized shall * * * to the extent that such amount exceeds the adjusted basis * * * be credited to the appropriate bad debt reserve", no amount of interest is currently taxable under the regulation.

The Government responded in *Gibraltar Fin. Corp. v. United States, supra,* as here, by arguing that under the regulation, "amount realized" is limited to the "recovery of capital", so recovered interest must be currently taxable. *Id.* The Court of Appeals for the Federal Circuit agreed, observing that "the language on which taxpayer relies is restricted by the part of the regulation which limits 'amount realized' to 'recovery of capital.'" *Id.* at 1574. Regardless of whether

we give the two juxtaposed parts of the regulation this construction, we agree with respondent's position that "amount realized" in the context of section 595(b) includes recovered interest, and, as already indicated and as further discussed *infra,* we believe the "same characteristics" language of section 595(b) must override any implication in section 1.595–1(e)(6)(i), Income Tax Regs., that recovered interest need not be currently reported.

We repeat: section 595(b) flatly states that *"any amount realized * * * shall be treated * * * as a payment on account of such indebtedness"* (emphasis added). The "indebtedness" that the foreclosed property secured possessed the characteristic of yielding interest. To have the same characteristics as the "indebtedness", the foreclosed property must also have that ability of producing interest, and in the case before us "that characteristic bore fruit." See *First Charter Fin. Corp. v. United States,* 669 F.2d at 1351 (Sneed, J., specially concurring). It follows that unpaid interest, to the extent recovered on the sale of the foreclosure properties, is required by the language of section 595(b) to be treated as interest paid on an indebtedness, and we so hold. As such, it must be reported currently as ordinary income.

Prior cases have also noted the disparity between the tax treatment of uncollected interest in the hands of accrual basis and cash basis taxpayers, if petitioner's position were to prevail. This disparity was succinctly described in *First Charter Fin. Corp. v. United States, supra* at 1349–1350, and quoted with approval in *Gibraltar Fin. Corp. v. United States,* 825 F.2d at 1577, as follows:

> "An accrual method taxpayer recognizes interest as it accrues. It will therefore take ordinary income at the time the payment is due. The amount previously reported as accrued interest is applied to the taxpayer's basis in the property. Consequently, all that it receives when it sells the foreclosure property is a recovery of capital. Treas. Reg. § 1.595–1(d). Any recovery of that interest from the sale of the property cancels out this increase in basis, and no credit is assigned to the bad debt reserve.
>
> If the recovery of accrued but unpaid interest by a cash method taxpayer is not treated as ordinary income, the cash method taxpayer will take a nontaxable credit to its bad debt reserve. This credit may or may not reduce the taxpayer's bad debt deduction in a later year. The cash method taxpayer at least defers the gain. A mere difference in choice of accounting method should not have such significant consequences, absent some clear indication to the contrary." [Citation omitted; fn. ref. omitted.]

We believe this analysis additionally supports our conclusion as to the current taxability of recovered interest in the case before us.

Petitioner relies on two other cases which have dealt with aspects of section 595(b). The first of these is *Allstate Sav. & Loan Association v. Commissioner,* 68 T.C. 310 (1977), affd. 600 F.2d 760 (9th Cir. 1979). The second is *First Federal Sav. & Loan Association v. United States,* 228 Ct. Cl. 569, 660 F.2d 767 (1981). Neither is apposite.

In *Allstate Sav. & Loan Association v. Commissioner, supra* at 320, we held that because the expenses of selling foreclosed property are inherently capital in nature, recovery of the expenses is a recovery of capital. Such expenses would therefore be accounted for through appropriate charges or credits to a bad debt reserve, and would not be currently deductible. Since receipt of interest is not a recovery of capital, it is therefore fully consistent not to treat it as a credit to the bad debt reserve, but as ordinary income. *First Charter Fin. Corp. v. United States, supra* at 1349.

In *First Fed. Sav. & Loan Association v. United States, supra* at 796, the Court of Claims agreed with the taxpayer in that case that rents received by a savings and loan association during the period between foreclosure and sale are not ordinary income but are credits to a bad debt reserve. The Court of Claims felt that consistency required this result because Congress explicitly forbade savings and loan associations from taking a depreciation deduction. As the Court of Appeals for the Ninth Circuit pointed out in discussing *Allstate Sav. & Loan Association,* "No principles of taxation or fairness require that recovery of * * * unpaid interest be treated as a credit to the bad debt reserve." *First Charter Fin. Corp. v. United States,* 669 F.2d at 1349.

We have considered petitioner's argument regarding public policy considerations and find it unpersuasive.

To reflect the foregoing and concessions,

*Decisions will be entered under Rule 155.*