T.C. Memo. 2009-62

UNITED STATES TAX COURT

GARY R. FEARS, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 21508-05.                    Filed March 23, 2009.

<u>Anthony G. Tumminello</u>, for petitioner.

<u>John J. Boyle</u>, for respondent.

MEMORANDUM OPINION

MARVEL, <u>Judge</u>:  Respondent determined a $323,005 deficiency
in petitioner's 2001 Federal income tax.  Petitioner filed a
timely petition contesting respondent's determination.

The issues for decision are whether respondent issued a
timely and valid 2001 notice of deficiency, and if so, whether

respondent erred by denying petitioner's request to participate in a settlement initiative offered by respondent.

Background

The parties submitted this case fully stipulated pursuant to Rule 122.[1]  We incorporate the stipulations of facts into our findings by this reference.  Petitioner resided in Illinois when the petition was filed.[2]

This case relates to a so-called Son-of-BOSS transaction that occurred in 2000.  Petitioner was the sole shareholder of GF Gateway Investors, Inc. (GFG Investors), an S corporation, and the sole member of GF Gateway Investments, L.L.C. (GFG Investments).[3]  On October 27, 2000, GFG Investors and GFG Investments formed a partnership, Gateway Investment Partners (Gateway).  GFG Investors owned 1 percent of Gateway, and GFG Investments owned 99 percent.  GFG Investors, GFG Investments, and Gateway were formed solely to engage in the Son-of-BOSS transaction.

---

[1]All Rule references are to the Tax Court Rules of Practice and Procedure, and all section references are to the Internal Revenue Code, unless otherwise indicated.

[2]Although the parties stipulated that petitioner resided in Florida when he filed the petition, the petition shows that he resided in Illinois.

[3]Both entities were formed on Oct. 27, 2000.

On November 21, 2000, GFG Investments sold two foreign currency options (short options) to Deutsche Bank for $4,950,000 and purchased two foreign currency options (long options) from Deutsche Bank for $5 million. On November 22, 2000, GFG Investments contributed the short and long options to Gateway. On December 7, 2000, Gateway purchased foreign currency for $20,000. On December 13, 2000, the short and long options terminated. On December 21, 2000, several transactions occurred: (1) GFG Investments transferred its interest in Gateway to GFG Investors; (2) Gateway transferred the foreign currency to GFG Investors; and (3) Gateway was dissolved. On December 22, 2000, GFG Investors sold the foreign currency for $20,573.

On June 26, 2001, GFG Investors filed a 2000 Form 1120S, U.S. Income Tax Return for an S Corporation, reporting a $4,999,427 loss resulting from the foreign currency sale. On June 28, 2001, Gateway filed a Form 1065, U.S. Return of Partnership Income, for the period October 27 to December 21, 2000, reporting $5,020,000 of distributions of property other than money. On October 22, 2001, petitioner filed his 2000 Form 1040, U.S. Individual Income Tax Return (2000 return), reporting a net operating loss of $4,146,903 resulting from the foreign currency loss. Petitioner reported the $4,999,427 foreign currency loss from GFG Investors on a Form 4797, Sales of Business Property, attached to his 2000 return. On August 12,

2002, petitioner filed his 2001 Form 1040 (2001 return) reporting a $4,146,903 net operating loss carryover from 2000. On October 20, 2003, petitioner filed his 2002 Form 1040 reporting a $3,249,455 net operating loss carryover from 2000.

On June 22, 2004, respondent received from petitioner a Form 13582, Notice of Election to Participate in Announcement 2004-46 Settlement Initiative (settlement initiative notice). On June 28, 2004, pursuant to the unified audit and litigation provisions of the Tax Equity and Fiscal Responsibility Act of 1982 (TEFRA), Pub. L. 97-248, sec. 402(a), 96 Stat. 648, respondent issued a notice of final partnership administrative adjustment (FPAA) with respect to Gateway's taxable year ending December 21, 2000. Respondent determined, among other things, that Gateway was a sham, lacked economic substance, or was formed or availed of in connection with a transaction a principal purpose of which was to reduce substantially its partners' Federal tax liability in a manner inconsistent with the intent of the Internal Revenue Code.

On October 19, 2004, after several months of negotiations between respondent and petitioner's counsel regarding the settlement initiative notice, respondent denied petitioner's request to participate in the settlement initiative. On December 1, 2004, pursuant to the FPAA petitioner filed a petition at docket No. 23002-04 (the partnership-level

proceeding). After respondent moved to dismiss the partnership-level proceeding for lack of jurisdiction on the ground that the petition was not filed by a proper party[4] and after the Court gave petitioner an opportunity to object, on May 10, 2005, the Court issued an order of dismissal for lack of jurisdiction. Petitioner did not appeal.

On August 10, 2005, respondent issued petitioner a notice of deficiency for 2001 (2001 notice) disallowing, among other deductions, the net operating loss carryover from 2000.[5] Respondent also disallowed $3,889 of deductions reported on petitioner's 2001 Schedule A, Itemized Deductions,[6] relating to legal, accounting, consulting, and advisory fees and Gateway's tax preparation fees; $227 of deductions reported on his 2001 Schedule C, Profit or Loss From Business, relating to GFG Investments for taxes and licenses and legal and professional

---

[4]The petition in the partnership-level proceeding was filed in the name of "Gary Fears, Partner Gateway Investment Partners and Gary R. Fears, Sole Shareholder of GF Gateway Investors, Inc."

[5]On Nov. 18, 2005, respondent issued petitioner a notice of deficiency for 2000 and 2002. Petitioner did not petition the Court with respect to that notice.

[6]Respondent made an overall adjustment to petitioner's itemized deductions of $70,483 reflecting the $3,889 disallowed deduction and the sec. 67 and 68 limitations on itemized deductions. Respondent also adjusted the personal exemption that petitioner claimed on his 2001 return because of the adjustments to his taxable income.

fees; and a $156,192 flowthrough deduction from GFG Investors for legal, accounting, consulting, and advisory fees.

Petitioner timely petitioned this Court. On January 12, 2007, respondent filed a motion to dismiss for lack of jurisdiction and to strike with respect to the penalties determined in the 2001 notice, and on February 12, 2007, petitioner filed an objection to respondent's motion. We issued an Opinion in Fears v. Commissioner, 129 T.C. 8 (2007), granting respondent's motion.

## Discussion

### I. 2001 Return

The parties stipulated that petitioner's 2001 return was filed on August 12, 2002. However, petitioner contends in one part of his brief that the 2001 return was filed on July 31, 2002, and in another part of his brief that it was filed on July 15, 2002.

Generally, a Federal income tax return filed before the last day prescribed by law or by regulations promulgated pursuant to law for the filing thereof is considered filed on such last day. Sec. 6501(b)(1). However, a return received by the Commissioner before an extended due date is considered filed on the date received. First Charter Fin. Corp. v. United States, 669 F.2d 1342, 1346 (9th Cir. 1982); sec. 301.6501(b)-1(a), Proced. & Admin. Regs. A return mailed on or before the due date and

received by the Commissioner after the due date is considered filed on the date of the postmark made by the U.S. Postal Service (mailbox rule). Sec. 7502(a) and (b). The mailbox rule does not apply where a return is received by the Commissioner before the return's due date. See secs. 7502(a), 6501(b)(1).

Petitioner's return preparer signed and dated petitioner's 2001 return on July 31, 2002, and the U.S. Postal Service postmarked the return on August 8, 2002. Respondent stamped the 2001 return: "RECEIVED Aug. 12, 2002 ATSC IRS #0027", and we find that respondent received petitioner's 2001 return on that date. Because respondent received petitioner's 2001 return on August 12, 2002, before the extended due date, the mailbox rule does not apply. Consequently, petitioner's 2001 return is considered filed on August 12, 2002, the date respondent received it.

## II. 2001 Notice

Petitioner argues that the period of limitations on assessments under section 6501 had expired before respondent issued the 2001 notice and that the period for assessment under section 6229 does not apply. Section 6501(a) generally requires that the Commissioner assess income tax within 3 years after the taxpayer files a return. The mailing of a notice of deficiency to the taxpayer suspends the period of assessment during the period in which the Secretary is prohibited from making the

assessment or from collecting by levy or a proceeding in court (and, if a proceeding is commenced in the Court, until the decision of the Court becomes final) and for 60 days thereafter. Sec. 6503(a)(1).

Petitioner filed his 2001 return on August 12, 2002. Under section 6501(a) respondent had until August 12, 2005, to issue a notice of deficiency. Respondent mailed the 2001 notice on August 10, 2005, before the period of limitations for making an assessment would have expired under section 6501(a). Consequently, the 2001 notice was timely.[7]

Petitioner further contends that respondent's grounds for disallowing the 2001 net operating loss carryover were arbitrary and false. Specifically, petitioner argues that because respondent had not disallowed the 2000 net operating loss and had not assessed a deficiency in tax for 2000, the year in which the

---

[7]Because we hold that the 2001 notice was timely under sec. 6501(a), we need not decide whether sec. 6229 applies or whether the 2001 notice was timely under sec. 6229. Sec. 6229(a), which applies to TEFRA proceedings, provides that the Commissioner may assess income tax with respect to any person which is attributable to any partnership or affected item for a partnership taxable year within 3 years after the later of the date the partnership filed its return or the due date of the partnership return. If an FPAA is properly issued, sec. 6229(d) suspends the period of assessment in sec. 6229(a) for the period during which a petition may be filed with the Court (and if a petition is filed, until the decision of the Court becomes final) and for 1 year thereafter. Sec. 6229 operates to extend the general period of limitations for issuing notices of deficiency and making assessments under sec. 6501 in TEFRA proceedings. See Rhone-Poulenc Surfactants & Specialties, L.P. v. Commissioner, 114 T.C. 533, 542-543 (2000).

net operating loss originated, respondent improperly disallowed the 2001 net operating loss carryover. Petitioner's argument is misplaced. Respondent is not required to disallow the net operating loss in 2000 before he disallows the net operating loss carryover in 2001. See sec. 6214(b); Calumet Indus., Inc. v. Commissioner, 95 T.C. 257, 276-277 (1990) (the Commissioner "is not barred from assessing a deficiency for an open year where his determination does not concern additional assessments for a barred year, but only review of a computation from a barred year for the purpose of correctly determining the tax liability for an open year").

Moreover, under the TEFRA provisions the tax treatment of partnership items is decided at the partnership level. Sec. 6231(a)(3); Boyd v. Commissioner, 101 T.C. 365, 369 (1993). Partnership items include, for example, the partnership aggregate and each partner's share of the items of income, gain, loss, deduction, or credit of the partnership. Sec. 301.6231(a)(3)-1(a)(1)(i), Proced. & Admin. Regs. Affected items are items affected by the treatment of partnership items. Sec. 6231(a)(5). The 2000 net operating loss and the 2001 net operating loss carryover are affected items because their existence or amount is dependent on determinations made in the partnership-level proceeding. See, e.g., Maxwell v. Commissioner, 87 T.C. 783, 790-791 (1986). After the Court's order of dismissal in the

partnership-level proceeding became final, respondent appropriately issued the 2001 notice disallowing the net operating loss carryover in accordance with the determinations made in the partnership-level proceeding.  Therefore, we conclude that respondent did not disallow the 2001 net operating loss carryover on arbitrary or false grounds.

III. Other Disallowed Deductions

Petitioner alleges in his petition that respondent disallowed certain itemized and business deductions without requesting and auditing petitioner's records.  However, petitioner presented no evidence with respect to the itemized or business deductions he claimed,[8] nor did he dispute these adjustments in his brief.

Deductions are strictly a matter of legislative grace, and petitioner must show that his deductions are allowed by the Internal Revenue Code.  See Rule 142(a); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934).  Petitioner must also keep sufficient records to substantiate any deductions otherwise allowed by the Internal Revenue Code.  See sec. 6001; sec. 1.6001-1(a), Income Tax Regs.  Further, the failure to produce evidence in support of an issue of fact as to which a party has

---

[8]Although petitioner introduced into evidence an invoice from Jenkens & Gilchrist, a professional corporation, dated Mar. 13, 2001, for professional service fees of $150,000, the invoice did not substantiate any payment for any professional services.

the burden of proof and which has not been conceded by such party's adversary may be a ground for deciding the issue against that party. Rule 149(b). Petitioner had the burden of proving his entitlement to the deductions he claimed, see Rule 142(a), and petitioner failed to substantiate those deductions.[9] We sustain respondent's determination.

IV. Settlement Initiative

Petitioner argues that if we conclude the 2001 notice was timely and valid, he is entitled to the terms in the Son-of-BOSS settlement initiative under Announcement 2004-46, 2004-1 C.B. 964. The announcement was issued to offer taxpayers who have invested in the Son-of-BOSS tax shelter an opportunity to resolve their tax liabilities under a settlement initiative and avoid litigation. Id. The announcement states that the "Denial of a taxpayer's request to participate in this initiative is not subject to judicial review." Id. sec. 4(d)(1), 2004-2 C.B. at 965.

This Court is a court of limited jurisdiction, and it may exercise its jurisdiction only to the extent authorized by Congress. Sec. 7442; Moore v. Commissioner, 114 T.C. 171, 175 (2000); Naftel v. Commissioner, 85 T.C. 527, 529 (1985). Petitioner has not cited and we have not found any authority that

_____

[9]Petitioner does not contend that sec. 7491 applies to this case, and he has not produced evidence to show he satisfied the requirements of sec. 7491(a).

would permit us to review respondent's denial of a request to settle a case under a settlement initiative.  Moreover, we generally "will not look behind a deficiency notice to examine the evidence used or the propriety of * * * [the Commissioner's] motives or of the administrative policy or procedure involved in making his determinations."  Greenberg's Express, Inc. v. Commissioner, 62 T.C. 324, 327 (1974).  Therefore, we shall not review respondent's denial of petitioner's request to participate in the settlement initiative.

To reflect the foregoing,

Decision will be entered

for respondent.