WILLIAM SENNETT AND SANDRA SENNETT, PETITIONERS *V.*
COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 6169–72.    Filed May 2, 1983.

*Harry Margolis*, for the petitioners.
*M. Catherine McKenna*, for the respondent.

## OPINION

GOFFE, *Judge*: The Commissioner determined a deficiency in petitioners' Federal income tax for the taxable year 1969 in the amount of $65,351 together with an addition to tax for the same year under section 6653(a) in the amount of $3,268. Respondent has conceded the addition to tax and one of the adjustments contained in the statutory notice of deficiency.

The issue for decision is whether section 704(d) allows a former partner to deduct, in 1969, his payment to the partnership of a portion of his distributive share of partnership losses which was not previously deductible while he was a partner because the basis of his partnership interest was zero.

This case was submitted fully stipulated; the stipulation of facts and exhibits are incorporated herein by this reference.

The petitioners, William and Sandra Sennett, timely filed a joint Federal income tax return for the taxable year 1969. The petitioners resided in California at the time of the filing of their petition in this case. References to petitioner in the

singular will refer to William Sennett as we are concerned with the tax consequences of his partnership activities.

Professional Properties Partnership (PPP) was formed as a general partnership under the laws of the State of California. The original partnership agreement was executed on August 1, 1967, by the Maryelle Corp. and three individual partners, none of whom was petitioner. This partnership agreement was amended by an instrument executed in December of 1967. Under this amended partnership agreement, there were to be 17 partners whose interests in the partnership varied according to their contributions to the partnership. This instrument was executed by the Maryelle Corp., which was designated as the managing partner, and by the attorneys for the various partners who are represented in the instrument to have the authority to act for the partners. Petitioner became a partner of PPP under the terms of the amended partnership agreement, owning a 33.50-percent interest in exchange for a capital contribution of $135,000.

The business activities of PPP are set forth in *Abraham v. Commissioner*, T.C. Memo. 1974–19.

PPP filed a U.S. Partnership Return of Income (Form 1065) for the taxable year 1967 in which it reported an ordinary loss of $405,329. Petitioner's distributive share of this partnership loss was $135,785. Petitioner reported his allowable distributive share of the net loss of PPP for 1967 as $135,000.

Article III of the original PPP partnership agreement provided that "An individual capital account shall be maintained for each partner," that "The capital of the partnership shall consist of the obligation of the partnership actually paid by each partner," and that "The capital contribution of each partner shall consist of the capital invested by each partner as shown by the balance sheet rendered each year." At the beginning of 1968, the capital account of petitioner in PPP had a negative balance of $785. Petitioner made no capital contributions to PPP in 1968.

On November 26, 1968, petitioner and PPP executed an agreement for the sale of partnership interest. Under the terms of this agreement, petitioner sold to PPP his interest in PPP, effective December 1, 1968. This agreement further provided that:

2. PPP will purchase the interest of SENNETT in said Partnership for the sum of $250,000.00 payable $25,000.00 each and every calendar year

commencing with 1969 with interest on the unpaid balance at 4%, with no interest for the first six months from and after January 1, 1969. The annual payment shall be $25,000.00 plus interest.

3. SENNETT agrees to pay to PPP in one lump sum the total share of loss allocated to the interest in PPP which SENNETT is hereby relinquishing and transferring to PPP. SENNETT shall be given up to and including one year from date to make such payment and should SENNETT fail to make such payment, the unpaid balance shall bear interest at the rate of 10% and carry attorney's fees and costs.

PPP, on its 1968 return, reported a negative capital account of $109,061 corresponding to that portion of partnership interest purchased from petitioner and retained by the partnership. This represented 80 percent of petitioner's interest in PPP. The remaining 20 percent was sold by PPP to a third party.

On May 15, 1969, petitioner and PPP executed an amended agreement for the sale of partnership interest. This amended sales agreement reduced the amount that PPP would pay petitioner for his partnership interest to $240,000 which would be without interest if paid in full before December 31, 1969, and payable with 7–percent interest if one-half of the purchase price were paid in 1969 and the remaining balance paid in 1970. On this same date, PPP also executed a promissory note to petitioner in the amount of $240,000.

Petitioner signed the May 15, 1969, promissory note indicating that the note was satisfied in full. Petitioner, in 1969, paid PPP $109,061, which was equal to 80 percent of his share of PPP's accumulated ordinary losses.

On their 1969 Federal income tax return, petitioners reported $240,000 as long-term capital gain from the disposition of the installment obligation from PPP. On this same return, petitioners reported $109,061 as petitioner's distributive share of PPP's ordinary loss.

The Commissioner's notice of deficiency, mailed on June 7, 1972, disallowed in full petitioner's claimed deduction for the 1968 distributive share of PPP's 1967 and 1968 ordinary losses. In that notice of deficiency, the Commissioner set forth the following reasons for the disallowance:

(1) It has not been established that the partnership, in fact, sustained a loss in 1969

(2) It has not been established that any loss, if substantiated, should be recognized as bona fide for tax purposes.

These determinations relate to the validity of the underlying losses upon which petitioner's distributive share is based. In *Abraham v. Commissioner,* T.C. Memo. 1974–19, however, we held that PPP correctly reported on its partnership return the bases in certain properties, the depreciation of which gave rise to the losses reported by PPP. We subsequently declined to permit the respondent to relitigate the partnership loss issues in *Sennett v. Commissioner,* 69 T.C. 694 (1978), a case involving the same taxpayers before us now but involving different taxable years. Respondent, in the case before us, does not now make a third attempt to litigate the partnership loss issue. Instead, by amended answer, he alleges a new ground. This new ground is that petitioners should not be allowed to deduct in 1969 a distributive share of PPP's accumulated losses because, in 1969, petitioner had no basis in an interest in PPP. Respondent relies only upon this new ground for the disallowance of petitioners' claimed loss deduction. Respondent also concedes that, if we find for respondent and disallow the claimed $109,061 ordinary loss, this amount will reduce the amount that petitioners should report as capital gain from the disposition of the installment obligation from PPP, so that they should report $130,939 as such long-term capital gain rather than $240,000.

The issue before us involves the operation of section 704(d) as it limits the deductions a partner might otherwise be entitled to claim as a part of his distributive share of the losses sustained by a partnership.

Section 704(d) provides as follows:[2]

(d) LIMITATION ON ALLOWANCE OF LOSSES.—A partner's distributive share of partnership loss (including capital loss) shall be allowed only to the extent of the adjusted basis of such partner's interest in the partnership at the end of the partnership year in which such loss occurred. *Any excess of such loss over such basis shall be allowed as a deduction at the end of the partnership year in which such excess is repaid to the partnership.* [Emphasis added.]

---

[2]This is sec. 704(d) both as it existed during the taxable year in question and as it exists today. Two sentences were added by the Tax Reform Act of 1976 concerning the "at risk" provisions, but this addition was repealed by the Revenue Act of 1978.

This final version of section 704(d) differed from the corresponding section as it originated in the House of Representatives.[3] The original House version read as follows:

> (d) LIMITATION ON ALLOWANCE OF LOSSES.—A partner's distributive share of partnership loss (including capital loss) shall be allowed only—
>> (1) to the extent of the basis of such partner's interest in the partnership, or
>> (2) to the extent such partner is obligated to repay such loss as provided in section 737. [H. Rept. 1337, to accompany H.R. 8300 (Pub. L. 591), 83d Cong., 2d Sess. 179 (1954), [bills].]

The Senate version of this section, which was finally adopted, carried with it the following explanation in the Senate Finance Committee report:

> Subsection (d) of the House bill provides a limitation on the amount of partnership loss, ordinary or capital, allowable to a partner. A partner's distributive share of such loss will be allowed only to the extent of the basis of his interest in the partnership at the end of the partnership taxable year in which the loss occurred. Under the House bill, the entire loss is to be recognized immediately, and the amount thereof in excess of the basis of the partner's interest was treated as a loan from the partnership to the partner. To the extent that the partner's obligation is canceled by the partnership, section 737 of the House bill provides that the partner will be treated as having received a distribution in money from the partnership.
>
> Your committee has revised subsection (d) of the House bill to provide that *any loss in excess of the basis of a partner's partnership interest may be allowed as a deduction only at the end of the partnership year in which the loss is repaid, either directly, or out of future profits.*
>
> Subsection (d), as amended, may be illustrated as follows. Assume that a partner has a basis of $50 for his interest, and his distributive share of partnership loss is $100. Under this subsection, the partner's distributive share of the loss would be limited to $50, thereby decreasing the basis of his interest to zero. The remaining $50 loss would not be recognized, unless the partner makes a further contribution of $50. If, however, the partner repays the $50 loss to the partnership out of his share of partnership income for the following year, then the additional $50 loss will be recognized at the end of the year in which such repayment is made.
>
> [S. Rept. 1622, to accompany H.R. 8300 (Pub. L. 591), 83d Cong., 2d Sess. 383 (1954). Emphasis added.]

Section 1.704–1(d)(1), Income Tax Regs., provides that:

> (d) *Limitation on allowance of losses.* (1) A partner's distributive share of partnership loss will be allowed only to the extent of the adjusted basis

---

[3]Compare sec. 704(d) with H. Rept. 1337, to accompany H.R. 8300 (Pub. L. 591), 83d Cong., 2d Sess. 179 (1954) (bills), and S. Rept. 1622, to accompany H.R. 8300 (Pub. L. 591), 83d Cong., 2d Sess. 253–254 (1954) (bills).

(before reduction by current year's losses) of such partner's interest in the partnership at the end of the partnership taxable year in which such loss occurred. A partner's share of loss in excess of his adjusted basis at the end of the partnership taxable year will not be allowed for that year. However, *any loss so disallowed shall be allowed as a deduction at the end of the first succeeding partnership taxable year*, and subsequent partnership taxable years, *to the extent that the partner's adjusted basis for his partnership interest at the end of any such year exceeds zero* (before reduction by such loss for such year). [Emphasis added.]

Respondent's argument is based upon the language of section 1.704–1(d)(1), Income Tax Regs., which we have emphasized above. His position is that a partner's distributive share of any partnership loss, not deductible because he has no basis in his interest in the partnership, may be deducted in a subsequent year only if he is still a partner in the partnership. Respondent maintains that because petitioner sold his partnership interest in 1968 he no longer had, in 1969, an asset with a basis to adjust by the payment he made to PPP in 1969. Respondent contends that petitioner's payment to PPP served only to increase his basis in PPP's installment obligation and partially offset the long-term capital gain realized by petitioner upon the disposition of the installment obligation.

Petitioners argue for allowance of the deduction under broad concepts of partnership taxation. They first discuss the personal nature of a partner's share of losses of the partnership. They point out that the partnership is merely a conduit of the partner's interest in the losses sustained by the partnership. Finally, they argue that the partner's distributive share of losses is suspended at the partner level.

The portion of section 704(d) with which we are concerned provides: "Any excess of such loss over such basis shall be allowed as a deduction at the end of the partnership year in which such excess is repaid to the partnership." In applying this provision to the facts in this case, one must refer to section 706(c)(2)(A)(i) which provides:

SEC. 706. TAXABLE YEARS OF PARTNER AND PARTNERSHIP.

(c) CLOSING OF PARTNERSHIP YEAR.—

\*　　\*　　\*　　\*　　\*　　\*　　\*

(2) PARTNER WHO RETIRES OR SELLS INTEREST IN PARTNERSHIP.—

(A) DISPOSITION OF ENTIRE INTEREST.—The taxable year of a partnership shall close—

(i) with respect to a partner who sells or exchanges his entire interest in a partnership, * * *

Applying section 706(c)(2)(A)(i) to the facts in the instant case, the taxable year of PPP with respect to petitioner closed in December 1968, when he sold his entire interest in PPP. That being the case, petitioner paid 80 percent of his share of PPP's losses for 1967 and 1968 to PPP after the close of his last partnership year with PPP which fails to come within the provisions of section 704(d) which allows the deduction "at the end of the partnership year in which such excess is repaid to the partnership." Such a construction of section 704(d) is not only supported by section 706(c)(2)(A)(i) but is confirmed by the language of the report of the Senate Finance Committee, quoted above (S. Rept. 1622, *supra*) wherein it explains that the loss is deductible *only at the end of the partnership year in which the loss is repaid, either directly, or out of future profits.* The payment from the partner to the partnership could not be paid out of future profits if the partner had previously sold his partnership interest because he would have no right to share in the future profits.

Even if section 706(c)(2)(A)(i) were not in the Internal Revenue Code, we would construe the quoted language of section 704(d) in like manner because it permits a deduction to the partner at the "end of the partnership year" and if the taxpayer is no longer a partner, his deductions would be allowable without regard to a "partnership year." Section 704(d), standing alone, contemplates that a taxpayer will be a partner in the year that he pays the partnership, which entitles him to deduct his share of the loss.

Such a result is also consistent with our recent holding which follows other decisions cited therein whereby we held that losses of a partnership cannot be allocated to partners who entered the partnership after the losses were sustained.[4]

Respondent's position is also supported by the fact that section 704(d) ties the allowance of partnership losses to a partner's adjusted basis in his partnership interest. The theory of section 704(d) is that a partner may take partnership losses to the extent of the adjusted basis of his partnership interest.

---

[4]*Meinerz v. Commissioner,* T.C. Memo. 1983–191, and cases cited therein.

If he does not have a basis at the end of the partnership year in which the loss is sustained, he can increase his basis by paying the partnership an amount equal to his share of the partnership loss and then deduct his share of the loss. But when a taxpayer sells his partnership interest in one year and pays his share of partnership losses in a subsequent year, this payment cannot increase his adjusted basis in his interest in the partnership for he no longer owns the asset (the partnership interest). This is further supported by the description in section 704(d) of the extent of the deduction based upon the "*partner's* adjusted basis." Petitioner was not a partner at the end of 1969, the year he paid PPP.

Petitioners argue that Mr. Sennett had a continuing obligation to pay PPP for his share of the 1967 and 1968 losses after selling his interest in PPP. We recognize that he undertook such an obligation in the agreement for the sale of his PPP partnership interest to PPP, but it is far from clear that he was otherwise obligated by virtue of the terms of the partnership agreement. Petitioner was not a partner in PPP when it was formed in August 1967. That original partnership agreement recited the parties' intent to conduct business as a general partnership. The amended partnership agreement dated in December 1967, in which petitioner first acquired his partnership interest in PPP, recited an express understanding that the partners had no liability in excess of their contributions. Moreover, petitioner did not even comply with the terms of the agreement of sale in paying PPP. The agreement provided that he pay the total share of the loss allocated to the interest he was selling to PPP. Instead, he paid only 80 percent of that loss, leaving unpaid the 20 percent of his interest in the loss which PPP in the meantime sold to another party. Based upon the record before us depicting conflicting recitals of petitioner's liability, coupled with payment contrary to the agreement of sale and satisfaction of the agreement of sale without explanation of the discrepancy, we can draw no conclusion as to the source of petitioner's liability to pay PPP for his share of the losses. Even if we concluded that such liability continued beyond the sale of his partnership interest independently of the agreement of sale, it would not alter our construction of section 704(d) which we discussed above.

Petitioners' focus upon the obligation to pay PPP for the losses is similar to the approach of the House version of section 704(d) (discussed above) which was not enacted by Congress.[5]

We agree with respondent that petitioners may not, in 1969, deduct Mr. Sennett's share of the losses sustained by PPP in 1967 and 1968 equal to his payment to PPP of $109,061 in 1969 and that petitioners may, instead, as conceded by respondent, offset $109,061 against the proceeds received by them in 1969 from the disposition of the installment obligation of PPP.

*Decision will be entered under Rule 155.*

---

[5]But cf. sec. 704(b) as amended by sec. 213(d), Tax Reform Act of 1976, 90 Stat. 1520, 1548.

