**William SENNETT and Sandra Sennett, Petitioners-Appellants,**

**v.**

**COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.**

No. 83–7758.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 11, 1984.

Decided Jan. 22, 1985.

As Amended April 9, 1985.

---

Harry Margolis, Los Gatos, Cal., for petitioners-appellants.

Raymond Hepper, Washington, D.C., for respondent-appellee.

Before WALLACE, HUG and SCHROEDER, Circuit Judges.

PER CURIAM.

Taxpayers William and Sandra Sennett claimed an ordinary loss deduction of $109,061 on their 1969 tax return. This loss represented William Sennett's share of the ordinary losses incurred in 1968 by Professional Properties Partnership ("PPP") when it repurchased his interest in the partnership. The Commissioner of Internal Revenue disallowed the deduction asserting *inter alia* that in 1969 Sennett had no basis in an interest in PPP since he had left the partnership in 1968 and is precluded by 26 U.S.C. § 704(d) and Treas.Reg. § 1.704–1(d) from claiming any loss. The Tax Court, 80 T.C. 825, ruled against petitioners. It held that a former partner may not invoke the loss carryover provisions of section 704(d) in the tax year after the withdrawal from the partnership of that partner. We agree and affirm.[1]

## FACTS

Sennett entered PPP as a limited partner in December 1967. PPP's total capital at that time was approximately $402,000. Sennett contributed $135,000 and received a 33.5% interest in the partnership. In 1967 PPP reported an ordinary loss of $405,329, and Sennett reported his allowable distributive share of $135,000.

Sennett sold his interest in PPP on November 26, 1968, with an effective date of December 1, 1968. The contract provided that PPP would pay Sennett $250,000, in annual installments with interest. Sennett agreed to pay PPP within one year the total loss allocated to Sennett's surrendered interest. PPP then sold twenty percent of Sennett's interest to a third party. PPP's return in 1968 reported a negative capital account of $109,061, corresponding to the eighty percent portion of the partnership interest PPP bought from Sennett and retained.

On May 15, 1969, Sennett and PPP executed an amended agreement which reduced PPP's obligation to $240,000, without interest if paid in full by December 31, 1969, or if paid one-half in 1969 and the rest in 1970, at seven percent interest. PPP executed a promissory note to Sennett for $240,000, which Sennett signed as paid in full. Sennett meanwhile paid PPP $109,061, which was eighty percent of his share of PPP's 1967 and 1968 losses. On his 1969 return Sennett reported $240,000 long-term

---

1. The Commissioner initially disallowed the deduction on the ground that PPP did not suffer the $109,061 loss. The Commissioner failed to press this argument in the Tax Court and does not raise it here, apparently accepting the opinion of the Tax Court that the issue already had been resolved against him in prior litigation involving PPP, *Abraham v. Commissioner,* T.C.M. (CCH) 1974–19, and Sennett, *Sennett v. Commissioner,* 69 T.C. 694 (1978).

capital gain and $109,061 as his distributive share of PPP's ordinary loss. The Commissioner disallowed the ordinary loss and maintained that, instead, there should be a long-term capital gain reported of $130,939 ($240,000 – $109,061). The Tax Court agreed and the Sennetts took this appeal.

## ANALYSIS

■ The parties stipulated to the facts in the Tax Court proceedings. The task of the Tax Court was to apply the law to these facts. Review *de novo* is, therefore, appropriate. *Confederated Tribes of Warm Springs Reservation v. Kurtz*, 691 F.2d 878, 880 (9th Cir.1982), *cert. denied*, 460 U.S. 1040, 103 S.Ct. 1433, 75 L.Ed.2d 792 (1983).

■ In deciding whether Sennett can deduct a $109,061 loss, we must look to 26 U.S.C. § 704(d). The statute provides:

LIMITATION ON ALLOWANCE OF LOSSES.—A partner's distributive share of partnership loss (including capital loss) shall be allowed only to the extent of the adjusted basis of such partner's interest in the partnership at the end of the partnership year in which such loss occurred. *Any excess of such loss over such basis shall be allowed as a deduction at the end of the partnership year in which such excess is repaid to the partnership.* (Emphasis added.)

Treas.Reg. § 1.704–1(d)—in force in 1969 and having substantively the same effect now—interprets the statute as allowing only a partner to benefit from the carryover allowed by subsection 704(d). The Commissioner relies upon this regulation in disallowing the deduction, since Sennett was not a partner in the year he repaid the excess. Sennett does not deny this. Nor does he deny that his basis was zero when PPP purchased his interest and incurred the loss in 1968. Sennett argues instead that the regulation is merely an "interpretive regulation," and entitled to little or no weight. Sennett points to statutory language which allows the taxpayer to claim a

deduction in the amount of the excess of basis in the partnership. He claims he repaid the loss in 1969 and is entitled to the deduction regardless of his lack of partner status.

This circuit has held that an interpretive regulation will be given effect if "it is a reasonable interpretation of the statute's plain language, its origin, and its purpose." *First Charter Financial Corp. v. United States*, 669 F.2d 1342, 1348 (9th Cir.1982). "A Treasury regulation 'is not invalid simply because the statutory language will support a contrary interpretation.'" *Id.* (quoting *United States v. Vogel Fertilizer Co.*, 455 U.S. 16, 26, 102 S.Ct. 821, 828, 70 L.Ed.2d 792 (1982)). As will be explained below, restricting carryover to partners is a reasonable interpretation in light of the wording of the statute and the legislative history.

Statutory language supports the Treasury Regulation. For example, the presence of the word "partner" at the beginning of subsection 704(d) strongly implies that a taxpayer must be a partner to take advantage of the carryover.

The Treasury Regulation's interpretation is also supported by a review of the legislative history of the statute. Section 704(d), as initially adopted by the House, allowed for deduction of the distributive share to the extent of adjusted basis. There was no provision for a carryover of the excess loss until the excess was repaid. H.R.Rep. No. 1337, 83d Cong., 2d Sess. 1, *reprinted in* 1954 U.S.Code Cong. & Ad.News 4017, 4364. The bill the Senate passed, which was the version Congress enacted, provided for carryover. The accompanying Senate Report sums up both sentences of subsection 704(d) in a fashion that demonstrates the committee felt the subsection limited carryover to partners. It states:

Your committee has revised subsection (d) of the House bill to provide that any loss in excess of the basis of a *partner's* partnership interest may be allowed as a deduction only at the end of the partner-

ship year in which the loss is repaid, either directly, or out of future profits.

Subsection (d), as amended, may be illustrated as follows. Assume that a partner has a basis of $50 for his interest, and his distributive share of partnership loss is $100. Under the subsection, the partner's distributive share of the loss would be limited to $50, thereby decreasing the basis of his interest to zero. The remaining $50 loss would not be recognized, unless the partner makes a further contribution of $50. If, however, the *partner* repays the $50 loss to the partnership *out of his share of partnership income for the following year,* then the additional $50 loss will be recognized at the end of the year in which such repayment is made.

S.Rep. No. 1622, 83d Cong., 2d Sess. 1, *reprinted in* 1954 U.S.Code Cong. & Ad. News 4621, 5025 (emphasis added).

Limiting carryover to those who are partners at the time of repayment, as Treas. Reg. § 1.704–1(d) does, effectuates congressional intent to allow deductions only to the extent of adjusted basis. When a partner repays the excess loss, it is, as the Senate Report notes, "a further contribution" to the partnership. The partner thereby increases his basis by an amount equal to the loss and reduces it to zero by taking the loss. Nor is the partnership element merely a formal distinction, since the partner repaying the excess loss increases his interest in the partnership and his exposure to loss. Sennett's position, in contrast, was that of a debtor with rights superior to those of partners.

## CONCLUSION

■ Since Sennett was not a member of the partnership at the time he attempted to invoke the loss carryover provisions of section 704(d) by repaying his claimed share of the loss, he was not entitled to deduct a portion of PPP's 1967 and 1968 losses. The decision of the Tax Court rejecting the $109,061 deduction and setting taxpayer's long-term capital gain for the 1969 taxable year at $130,939 is affirmed.