154 T.C. No. 2

UNITED STATES TAX COURT

CHARLES L. FROST, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 30020-15.                    Filed January 7, 2020.

P, a self-employed insurance salesman and consultant, traveled between Oregon and Texas to service clients and to address personal issues. During the years in issue P prepared his own tax returns and deducted expenses on his Schedules C, Profit or Loss From Business, related to his travels. He also deducted on his 2011 Schedule E, Supplemental Income and Loss, his distributive share of a loss related to an LLC in which he owned an 80% membership interest. After an administrative appeal, the IRS Office of Appeals issued notices of deficiency to P for 2010, 2011, and 2012 that reduced P's Schedule C deductions, disallowed his entire 2011 Schedule E deduction, and imposed I.R.C. sec. 6662(a) accuracy-related penalties. A Civil Penalty Approval Form listing the 2012 accuracy-related penalty was signed by the examining agent's manager over a year before the notice of deficiency was issued.

<u>Held</u>: R's adjustments to P's Schedules C and Schedule E deductions are sustained.

Held, further, R bears the initial burden of production under I.R.C. sec. 7491(c) to offer evidence of compliance with the requirement of I.R.C. sec. 6751(b)(1) that the individual initially determining accuracy-related penalties obtain written supervisory approval.

Held, further, R has not met his initial burden of producing evidence that his agent complied with I.R.C. sec. 6751(b)(1) for the 2010 and 2011 accuracy-related penalties, so P is not liable for those penalties.

Held, further, R satisfied his initial burden of producing evidence that his agent complied with I.R.C. sec. 6751(b)(1) for the 2012 accuracy-related penalty by introducing a Civil Penalty Approval Form for that tax year signed before a formal communication to P of the penalty for that year.

Held, further, once R has satisfied his initial burden of production under I.R.C. sec. 7491(c), P must come forward with contradictory evidence suggesting that R's agent did not comply with I.R.C. sec. 6751(b)(1).

Held, further, as to the 2012 accuracy-related penalty, P has not introduced evidence, nor does the record support a conclusion, that R made any formal communication of his initial penalty determination before the date that the examining agent's manager signed the Civil Penalty Approval Form.

Held, further, R has shown that P's underpayment for 2012 was due to a substantial understatement of income tax and P has not shown that he had reasonable cause for his underpayment for 2012, so P is liable for the 2012 accuracy-related penalty.

Charles L. Frost, pro se.

Gabriel Nuñez-Lafontaine, for respondent.

PUGH, Judge: In two notices of deficiency, dated September 1, 2015,[1] respondent determined the following deficiencies and penalties:[2]

| Year | Deficiency | Penalty sec. 6662(a) |
|------|-----------|----------------------|
| 2010 | $19,413 | $3,883 |
| 2011 | 20,907 | 4,181 |
| 2012 | 6,095 | 1,219 |

The issues for decision are whether petitioner is: (1) entitled to deduct expenses reported on his Schedules C, Profit or Loss From Business, for the years in issue, (2) entitled to deduct a $28,187 loss from www.retirewell.org, LLC (Retirewell.org), for 2011, and (3) liable for section 6662(a) penalties.

---

[1] Tax years 2010 and 2011 are both listed on one notice, while 2012 is listed on the other.

[2] Unless otherwise indicated, section references are to the Internal Revenue Code of 1986 (Code), as amended, in effect for the years in issue. Rule references are to the Tax Court Rules of Practice and Procedure. All monetary amounts are rounded to the nearest dollar.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found.  The stipulated facts are incorporated in our findings by this reference.

I.  Background

Petitioner resided in New Mexico when he timely filed his petition.  During the years in issue he was self-employed as an insurance salesman and consultant with Oregon as his principal place of business.  Petitioner moved to Oregon in 2005 to work with his brother-in-law and to expand his business.

During the years in issue petitioner served 224 clients throughout Oregon. He also served a much smaller number of clients in several other States, including 14 clients in Texas.  While petitioner traveled between Oregon and Texas to service his Texas clients, he mostly traveled to Texas for personal reasons, which included reconciling with his wife, who lived in San Antonio.  During the years in issue he also addressed other personal, family, and health challenges, including his brother-in-law's cancer diagnosis in 2011 and death in 2013.  These challenges also limited his access to certain business records during and after the years in issue.

Petitioner also owned an 80% membership interest in Retirewell.org, a limited liability company that he organized in Texas in 2011 and treated as a

partnership for Federal income tax purposes. Retirewell.org was an information and advertising company focused on promoting health and fiscal awareness. Two other individuals, Robert and Judy Bigman, each owned a 10% membership interest in the company.

During 2011 and 2012 Retirewell.org did not earn any income or incur any liabilities. While the Bigmans each made a $25,000 capital contribution to the company around 2011, petitioner did not make any capital contribution to the company in 2011 or 2012.

Petitioner also prepared tax returns as an enrolled agent with the Internal Revenue Service (IRS) during the years in issue.[3] He has prepared returns for profit as an enrolled agent for about 25 years. Before becoming an enrolled agent, petitioner had performed collections work as an IRS revenue agent. During almost 40 years of work at the IRS and then preparing tax returns, petitioner was aware of and advised his clients about tax compliance issues such as the substantiation requirements for expenses related to business deductions. He

---

[3] An enrolled agent is an individual who is neither a lawyer nor a certified public accountant that is allowed to represent taxpayers before the IRS, either by passing the Special Enrollment Examination or by being designated by the IRS because of experience as a long-term employee. See 31 C.F.R. sec. 10.4 (2018). Petitioner was recognized as an enrolled agent because he had 12 years of experience as a revenue agent.

continued to prepare returns, including his own and others, during the years in issue, despite his health and personal challenges.

## II. Tax Returns

### A. Petitioner's Individual Tax Returns

Petitioner prepared and timely filed Forms 1040, U.S. Individual Income Tax Return, for the years in issue. For 2010 and 2011 petitioner listed his home and business addresses as the same address in San Antonio, Texas. For 2012 he listed a home address in Albuquerque, New Mexico, and a business address in Florence, Oregon. For the years in issue, petitioner reported his business expenses as an insurance salesman on Schedules C, and for 2011 he claimed his distributive share of Retirewell.org's losses on a Schedule E, Supplemental Income and Loss.

#### 1. 2010 and 2011

On his 2010 and 2011 Forms 1040 petitioner reported $37,764 and $26,335 of business income, respectively. On his 2010 and 2011 Schedules C petitioner reported $118,565 and $77,051 of gross profits, respectively. Petitioner offset these profits in part with business expense deductions, including travel and meal and entertainment expenses related to his trips between Oregon and Texas. These deductions, which respondent adjusted in whole or in part, are listed below:

| Expense | 2010 | 2011 |
|---|---|---|
| Contract labor | $1,700 | $2,266 |
| Other | 31,415 | 9,707 |
| Utilities | 1,440 | 2,009 |
| Meals and entertainment | 1,233 | 2,781 |
| Travel | 11,450 | 11,153 |
| Taxes and licenses | 3,100 | 3,685 |
| Supplies | 7,100 | 1,686 |
| Rent or lease | 4,200 | 2,100 |
| Office | 4,800 | 2,067 |
| Car and truck | 10,447 | 12,133 |
| Advertising | 6,671 | 3,778 |

On his 2011 Form 1040 petitioner also reported a $28,187 loss related to his distributive share of Retirewell.org's losses. Family strife in 2012 made access to certain records for 2010 and 2011 difficult.

2. 2012

On his 2012 Form 1040 petitioner reported $56,576 of business income. On his 2012 Schedule C he reported $107,678 of gross profit. Petitioner offset this profit in part with business expense deductions, including travel expenses related to his trips between Oregon and Texas. These deductions, which respondent adjusted in whole or in part, are listed below:

| Expense | Amount |
|---------|--------|
| Travel | $6,312 |
| Car and truck | 6,755 |
| Advertising | 14,990 |

B. Retirewell.org's Tax Return

Petitioner also prepared and timely filed a Form 1065, U.S. Return of Partnership Income, for Retirewell.org for 2011. Petitioner listed the same San Antonio address on the Form 1065 that he listed on his Form 1040, as well as the Schedule K-1, Partner's Share of Income, Deductions, Credits, etc., attached to the Form 1065 identifying his interest in the company. The other attached Schedules K-1 each listed an address in Philomath, Oregon, for the Bigmans.

Retirewell.org reported $35,234 of business expenses it had incurred in 2011 without any offsetting income. A list of those business expenses, titled "Supporting Statement #1", was attached to the Form 1065. The amounts for many of these business expenses (e.g., advertising, office, utilities, travel, postage, and printing) were nearly identical to the amounts for business expenses that petitioner reported on his 2011 Schedule C.

## III. Respondent's Determinations

Respondent's Office of Appeals issued the notices of deficiency to petitioner after an administrative appeal. Respondent reduced petitioner's Schedule C deductions by $39,709, $34,678, and $13,204 for 2010, 2011, and 2012, respectively. Respondent also disallowed petitioner's entire Schedule E deduction related to the Retirewell.org loss for 2011.

As a result of these adjustments, respondent determined that petitioner owed an additional $19,413, $20,907, and $6,095 of tax for 2010, 2011, and 2012, respectively. Respondent also determined underpayment penalties under section 6662(a) and (b)(1) and (2) for negligence and/or substantial understatements of income tax of $3,883, $4,181, and $1,219 for 2010, 2011, and 2012, respectively. A Civil Penalty Approval Form prepared by the examining agent on April 22, 2014, listed 2012 and bore an electronic signature dated May 20, 2014, approving the substantial understatement penalty. The total tax shown on petitioner's 2012 Form 1040 was $13,685, and the total corrected tax liability was $19,780. The record does not include any evidence of penalty approval for 2010 and 2011.

OPINION

I. <u>Burden of Proof</u>

Ordinarily, the burden of proof in cases before the Court is on the taxpayer. Rule 142(a); <u>Welch v. Helvering</u>, 290 U.S. 111, 115 (1933). Under section 7491(a)(1), "[i]f, in any court proceeding, a taxpayer introduces credible evidence with respect to any factual issue relevant to ascertaining the liability of the taxpayer for any tax imposed by subtitle A or B, the Secretary shall have the burden of proof with respect to such issue." <u>See</u> <u>Higbee v. Commissioner</u>, 116 T.C. 438, 442 (2001).

Petitioner makes no argument that the conditions for shifting the burden of proof have been met. He also has not established his compliance with the substantiation requirements governing the deductions in issue as explained below. Petitioner therefore bears the burden of proof.

II. <u>Petitioner's Income</u>

A. <u>Schedule C Deductions</u>

Section 162 allows a taxpayer to deduct all ordinary and necessary expenses paid or incurred during the taxable year in carrying on a trade or business. Sec. 162(a); sec. 1.162-1(a), Income Tax Regs. An expense is "ordinary" if it is "normal, usual, or customary" in the taxpayer's trade or business or it arises from a

transaction "of common or frequent occurrence in the type of business involved."
Deputy v. du Pont, 308 U.S. 488, 495 (1940). An expense is "necessary" if it is
"appropriate and helpful" to the taxpayer's business, but it need not be absolutely
essential. Commissioner v. Tellier, 383 U.S. 687, 689 (1966) (quoting Welch v.
Helvering, 290 U.S. at 113). In contrast, a taxpayer may not deduct personal,
living, or family expenses unless the Code expressly provides otherwise. Sec.
262(a). The determination of whether an expense satisfies the requirements of
section 162 is a question of fact. Cloud v. Commissioner, 97 T.C. 613, 618 (1991)
(citing Commissioner v. Heininger, 320 U.S. 467, 473-475 (1943)).

A taxpayer must prove his entitlement to any deductions and credits
claimed. INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); New Colonial
Ice Co. v. Helvering, 292 U.S. 435, 440 (1934). Taxpayers, therefore, are required
to maintain sufficient records to establish the amount of the deduction to enable
the Commissioner to determine the correct tax liability. Sec. 6001; sec.
1.6001-1(a), Income Tax Regs.; see also Higbee v. Commissioner, 116 T.C.
at 440. Under the Cohan rule, the Court may estimate the amount of an expense if
the taxpayer is able to demonstrate that he has paid or incurred a deductible
expense but cannot substantiate the precise amount, as long as he produces
credible evidence providing a basis for the Court to do so. Cohan v.

Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930); see also Vanicek v. Commissioner, 85 T.C. 731, 742-743 (1985). Without such a basis, any allowance would amount to "unguided largesse". Williams v. United States, 245 F.2d 559, 560 (5th Cir. 1957).

However, section 274 supersedes the Cohan rule for certain expenses, including those for travel and meals and entertainment, by imposing strict substantiation requirements. See sec. 274(d); see also Sanford v. Commissioner, 50 T.C. 823, 827-828 (1968), aff'd per curiam, 412 F.2d 201 (2d Cir. 1969); Fiedziuszko v. Commissioner, T.C. Memo. 2018-75, at *14-*15; sec. 1.274-5(c)(2)(iii), Income Tax Regs.; sec. 1.274-5T(a), Temporary Income Tax Regs., 50 Fed. Reg. 46014 (Nov. 6, 1985). To meet these strict substantiation requirements, a taxpayer must substantiate by adequate records or by sufficient evidence corroborating the taxpayer's own statement: (1) the amount of the expense, (2) the time and place of the travel or use, and (3) the business purpose of the expense. Sec. 274(d); see also sec. 1.274-5T(b)(2), Temporary Income Tax Regs., 50 Fed. Reg. 46014 (Nov. 6, 1985). To substantiate by adequate records, the taxpayer must provide: (1) an account book, log, or similar record, and (2) documentary evidence, which together are sufficient to establish each element with respect to an expenditure. Sec. 1.274-5T(c)(2)(i), Temporary Income Tax Regs., 50 Fed. Reg.

46017 (Nov. 6, 1985). Although a contemporaneous log is not required, corroborative evidence to support a taxpayer's reconstruction "must have a high degree of probative value to elevate such statement" to the level of credibility of a contemporaneous record. Id. subpara. (1).

Despite his extensive experience preparing tax returns as an enrolled agent, petitioner submitted no evidence in support of his claimed business expense deductions aside from a list of clients and a calendar he created solely from memory during the examination. Petitioner not only failed to comply with the strict substantiation requirements for expenses covered by section 274(d), but he also failed to produce any evidence that would allow us to estimate the amount of any of his expenses for his extensive travel between Oregon and Texas. Accordingly, we sustain respondent's adjustments to petitioner's Schedule C expense deductions for the years in issue.

We therefore need not consider respondent's second challenge to petitioner's travel expenses, namely, whether petitioner's tax home was in Oregon or Texas.

B. Schedule E Loss Deduction

Respondent contends that petitioner cannot deduct a $28,187 Schedule E distributive share of partnership losses for 2011 because he has failed to

substantiate his basis in Retirewell.org. A deduction for a partner's distributive share of partnership losses is allowed only to the extent of the adjusted basis of the partner's interest in the partnership at the end of the partnership year in which the losses occurred, and the losses cannot reduce the partner's basis below zero. Secs. 704(d), 705(a)(2). If the partner cannot establish his adjusted basis in his interest, then he cannot deduct any partnership losses. See sec. 704(d); Sennett v. Commissioner, 80 T.C. 825, 829 (1983), aff'd, 752 F.2d 428 (9th Cir. 1985). Furthermore, "[p]roof of basis is a specific fact which the taxpayer has the burden of proving." O'Neill v. Commissioner, 271 F.2d 44, 50 (9th Cir. 1959), aff'g T.C. Memo. 1957-193; see also Powers v. Commissioner, T.C. Memo. 2013-134, at *28-*30.

Petitioner has provided no credible evidence of his adjusted basis. The only evidence he did provide consisted of his and Retirewell.org's tax returns. We have held previously that a taxpayer's returns do not substantiate deductions or losses because they are nothing more than statements of his claims. See Wilkinson v. Commissioner, 71 T.C. 633, 639 (1979) (citing Roberts v. Commissioner, 62 T.C. 834, 837, 839 (1974)); Baker v. Commissioner, T.C. Memo. 2008-247, 2008 WL 4756651, at *3. The same rules apply to the Schedules K-1 petitioner attached to his tax returns. See Baker v. Commissioner,

2008 WL 4756651, at *4; LeBouef v. Commissioner, T.C. Memo. 2001-261, 2001 WL 1168126, at *7.  Petitioner also contended for the first time at trial that he borrowed $50,000 from two individuals in exchange for a recourse note as part of an investment he made in the company, but he neither identified the two individuals providing the loan nor provided any documentation to substantiate this claim.  We therefore sustain respondent's disallowance of petitioner's distributive share of partnership losses from Retirewell.org for 2011.

## III. Validity of the Notices of Deficiency

Petitioner's arguments regarding the validity of the notices of deficiency center on the procedures by which respondent selected his returns for examination. This Court has long held that we generally do not look behind a notice of deficiency to question the procedures the Commissioner followed leading up to the issuance of the notice.  See, e.g., Greenberg's Express, Inc. v. Commissioner, 62 T.C. 324 (1974).  Petitioner has not alleged or shown that respondent's conduct was either unconstitutional or sufficiently egregious as to jeopardize the integrity of the judicial process.  See id. at 328; see also Green v. Commissioner, 322 F. App'x 412, 417 (5th Cir. 2009) (citing Portillo v. Commissioner, 932 F.2d 1128, 1133-1134 (5th Cir. 1991) (discussing exception), aff'g in part, rev'g in part T.C.

Memo. 1990-68), aff'g T.C. Memo. 2008-130.  Accordingly, the Court will not

look behind the notices or investigate the motives behind their issuance.

IV.  Penalties

Section 6662(a) and (b)(1) and (2) imposes an accuracy-related penalty

equal to 20% of the portion of an underpayment of tax required to be shown on a

return that is attributable to "[n]egligence or disregard of rules or regulations"

and/or a "substantial understatement of income tax."  Negligence includes "any

failure to make a reasonable attempt to comply with the provisions of this title".

Sec. 6662(c).  An understatement of income tax is a "substantial understatement"

if it exceeds the greater of 10% of the tax required to be shown on the return or

$5,000.  Sec. 6662(d)(1)(A).

The Commissioner bears the burden of production with respect to an

individual taxpayer's liability for any penalty, addition to tax, or additional

amount, requiring the Commissioner to come forward with sufficient evidence

indicating that imposition of penalties is appropriate.  See sec. 7491(c); Higbee v.

Commissioner, 116 T.C. at 446-447.  We have held that, as part of that burden, the

Commissioner must produce evidence that he complied with the procedural

requirements of section 6751(b)(1).  See Graev v. Commissioner, 149 T.C. 485,

492-493 (2017), supplementing and overruling in part 147 T.C. 460 (2016).

Section 6751(b)(1) requires the initial determination of certain penalties to be "personally approved (in writing) by the immediate supervisor of the individual making such determination". See Graev v. Commissioner, 149 T.C. at 492-493; see also Clay v. Commissioner, 152 T.C. 223, 248 (2019) (quoting section 6751(b)(1)). So we have concluded that the agent must obtain written supervisory approval for penalties before the first formal communication to the taxpayer of penalties. Clay v. Commissioner, 152 T.C. at 249.

We recently concluded that "the 'initial determination' of a penalty assessment--the 'consequential moment' of IRS action * * *--is embodied in the document by which the Examination Division formally notifies the taxpayer, in writing, that it has completed its work and made an unequivocal decision to assert penalties." Belair Woods, LLC v. Commissioner, 154 T.C. __, __ (slip op. at 24-25) (Jan. 6, 2020) (quoting Chai v. Commissioner, 851 F.3d 190, 221 (2d Cir. 2017), aff'g in part, rev'g in part T.C. Memo. 2015-42). And our recent cases have focused primarily on what constitutes the "consequential moment". E.g., id. at __ (slip op. at 23-25); Kestin v. Commissioner, 153 T.C. __, __ (slip op. at 27) (Aug. 29, 2019); Clay v. Commissioner, 152 T.C. at 249.

While we have held that the Commissioner's initial burden of production under section 7491(c) includes producing evidence that he complied with section

6751(b)(1), to date our cases have not addressed when the burden shifts to the taxpayer to show otherwise.[4]  To answer this question we again turn to our caselaw applying section 7491(c).  And we again start with Higbee v. Commissioner, 116 T.C. at 446, where we held that "for the Commissioner to meet his burden of production, the Commissioner must come forward with sufficient evidence indicating that it is appropriate to impose the relevant penalty."

In Wheeler v. Commissioner, 127 T.C. 200 (2006), aff'd, 521 F.3d 1289 (10th Cir. 2008), we expanded on our analysis of section 7491(c) with respect to the additions to tax under sections 6651(a)(1) (failure to file a timely tax return), 6651(a)(2) (failure to pay the amount of tax shown on a return), and 6654 (underpayment of estimated taxes).  In Wheeler, the taxpayer assigned error to the Commissioner's determinations of additions to tax under sections 6651(a)(1) and (2) and 6654.  Cf. Funk v. Commissioner, 123 T.C. 213, 218 (2004); Swain v. Commissioner, 118 T.C. 358, 365 (2002).  Therefore, we held that the Commissioner had to produce evidence regarding each determination.  Wheeler v. Commissioner, 127 T.C. at 207.

---

[4] For example, in Clay v. Commissioner, 152 T.C. 243, 249 (2019), we explained the Commissioner's failure to overcome contrary evidence introduced by the taxpayers regarding his compliance with sec. 6751(b)(1) as a burden of production problem without delving into how the burden shifted between the parties.

We held that the Commissioner's burden of production with respect to the section 6651(a)(1) addition to tax requires the Commissioner to introduce evidence showing that the taxpayer did not file his return (or a request for extension of time) by the original due date of the return. Id. at 207-208. The Commissioner did so; therefore, we held that the Commissioner met his initial burden. Id. at 208. Because the taxpayers offered no evidence, we upheld the Commissioner's determination. Id.

We held that the Commissioner's burden of production with respect to the section 6651(a)(2) addition to tax requires the Commissioner to introduce evidence that a return was filed or a substitute for return satisfying the requirements of section 6020(b) was made. Id. at 210. No return was filed and the Commissioner failed to produce sufficient evidence of a substitute for return, so we held that he failed to satisfy his initial burden of production under section 7491(c). Id.[5]

Finally, we held that the Commissioner's burden of production with respect to the section 6654 addition to tax requires him to produce evidence of a required

---

[5] In Wheeler v. Commissioner, 127 T.C. 200 (2006), aff'd, 521 F.3d 1289 (10th Cir. 2008), the Commissioner offered a Form 4340, Certificate of Assessments, Payments, and Other Specified Matters, referencing a substitute for return which we held was not enough to meet his burden of producing evidence that the substitute for return satisfied the requirements of sec. 6020(b).

annual payment payable in installments under section 6654. <u>Wheeler v. Commissioner</u>, 127 T.C. at 211-212. The Commissioner did introduce evidence of the taxpayer's liability for the year in issue. <u>Id.</u> But he introduced no evidence of a return for the previous year or the amount of tax shown on that previous year's return so he did not satisfy his burden of showing that the taxpayer had a required annual payment payable in installments under section 6654. <u>Id.</u> at 212.

Following our methodology of <u>Higbee</u> and <u>Wheeler</u> we hold that if the taxpayer has challenged the Commissioner's penalty determinations, the Commissioner must come forward with evidence of penalty approval as part of his initial burden of production under section 7491(c). And once the Commissioner makes that showing, the taxpayer must come forward with contrary evidence.[6]

Here, respondent produced no evidence of written supervisory approval of the initial determination of section 6662(a) accuracy-related penalties for 2010 and 2011 (the Civil Penalty Approval Form that respondent introduced covered only 2012). Respondent has not carried his initial burden of producing evidence to

---

[6] In <u>Graev v. Commissioner</u>, 149 T.C. 485, 494 n.14 (2017), <u>supplementing and overruling in part</u> 147 T.C. 460 (2016), we reserved the issue of whether the Commissioner bears the burden of proof in addition to the burden of production. We reserve that issue here as well because placement of the burden of proof here, as in <u>Graev</u>, would not change the outcome. As we explain below, petitioner introduced no contrary evidence.

show that the penalties for 2010 and 2011 were approved by the supervisor of the IRS employee who initially determined them. Therefore, petitioner is not liable for the section 6662(a) accuracy-related penalties for 2010 and 2011.

By contrast, the Civil Penalty Approval Form that respondent introduced did show approval of the section 6662(a) accuracy-related penalty for 2012 for an underpayment attributable to a substantial understatement of income tax. We know that the Civil Penalty Approval Form was signed on May 20, 2014, by the manager of the examining agent and that this was over a year before the notice of deficiency was issued.

We therefore must decide whether respondent's evidence showing that a penalty was approved before a formal communication of the penalty to petitioner (here, the notice of deficiency) is sufficient to satisfy his initial burden of production. If so, then the burden shifts to petitioner to introduce contrary evidence. But if instead respondent must also show as part of his initial burden of production that there were no formal communication(s) to petitioner about the penalty before the penalty was approved, then respondent has failed to meet his burden.

We hold that the Commissioner's introduction of evidence of written approval of a penalty before a formal communication of the penalty to the

taxpayer is sufficient to carry his initial burden of production under section 7491(c) to show that he complied with the procedural requirements of section 6751(b)(1). Because the Civil Penalty Approval Form indicated approval of the penalty for a substantial understatement but not for negligence, respondent has not satisfied his burden as to the penalty for negligence.

The burden now shifts to petitioner to offer evidence suggesting that the approval of the substantial understatement penalty was untimely--e.g., that there was a formal communication of the penalty before the proffered approval. If a taxpayer makes that showing, we will weigh the evidence before us to decide whether the Commissioner satisfied the requirements of section 6751(b)(1). This rule is faithful to the requirement that the Commissioner come forward initially with evidence of written penalty approval. By shifting the burden to the taxpayer after the Commissioner makes the initial showing, we avoid imposing the burden of proving a negative (i.e., that there were no prior formal communications). If the taxpayer introduces sufficient evidence to contradict the Commissioner's initial showing, then the Commissioner can respond with additional evidence and argument, and the Court can weigh all of the evidence (that is after all the business of judging). And evidence of prior formal communication (if it exists) would be available to the taxpayer since he would have received such a communication and

therefore could introduce it to challenge a claim that the supervisory approval was timely. In other words, the rule we articulate today will not require the Commissioner to show that there was no prior formal communication as part of his initial burden.

Here, petitioner has not claimed, nor does the record support a conclusion, that respondent formally communicated his initial penalty determination to petitioner before the date that the examining agent's manager signed the Civil Penalty Approval Form approving the substantial understatement penalty. We therefore hold that the substantial understatement penalty for 2012 was approved in writing before the first formal communication to petitioner of the penalty. See Clay v. Commissioner, 152 T.C. at 249.

Because respondent complied with the requirements of section 6751(b)(1), we now turn to the remainder of respondent's initial burden under Higbee. Petitioner's understatement of income tax of $6,095 is greater than the greater of $5,000 or $1,978, which is 10% of the amount of tax required to be shown on the 2012 Form 1040 ($19,780). Therefore, we hold that respondent has met his burden of production to show that petitioner's underpayment for 2012 was attributable to a substantial understatement. Petitioner bears the burden of

showing that he had reasonable cause for the underpayment and that he acted in good faith. See sec. 6664(c)(1); Higbee v. Commissioner, 116 T.C. at 446-447.

The decision as to whether a taxpayer acted with reasonable cause and in good faith is made on a case-by-case basis, taking into account all pertinent facts and circumstances. See sec. 1.6664-4(b)(1), Income Tax Regs. Generally, the most important factor is the extent of the taxpayer's efforts to assess the proper tax liability. Id.; see Halby v. Commissioner, T.C. Memo. 2009-204. We also consider the taxpayer's experience, knowledge, and education. See sec. 1.6664-4(b)(1), Income Tax Regs.

Petitioner argues that his and his brother-in-law's health issues and family strife provide reasonable cause for his underpayment for 2012. But petitioner was an enrolled agent who prepared tax returns for about 25 years and had been an IRS revenue agent for 15 years. He therefore had a better understanding of tax matters, including the need for documentation, than do members of the general public. See Green v. Commissioner, T.C. Memo. 2010-109. He continued to prepare returns for others during the years in issue. See Fitch v. Commissioner, T.C. Memo. 2012-358, supplemented by T.C. Memo. 2013-244. And he failed to explain how his difficulties in obtaining records affected his preparation of his 2012 Form 1040. While we are sympathetic to the challenges he faced over this period, we

cannot excuse his failure to substantiate his business expenses.  We therefore hold that petitioner is liable for the section 6662(a) penalty for 2012.

Any contentions we have not addressed we deem irrelevant, moot, or meritless.

To reflect the foregoing,

<u>An appropriate decision</u>

<u>will be entered</u>.